This is an appeal by the Public Service Commission of Missouri (hereinafter referred to as the commission) from a judgment of the Circuit Court of Cole County setting aside an order of the commission refusing the application of The Alton Transportation Company for a certificate of convenience and necessity authorizing it to operate a motor bus line, as a common carrier, between St. Louis and Kansas City and intermediate points on Missouri-U.S. Highway No. 40. The applicant, Alton Transportation Company is a subsidiary of the Chicago Alton Railroad Company, the entire stock of the transportation company, except qualifying shares, being owned by the Receivers of the railroad company. The transportation company "was organized for the purpose of conducting a motor carrier business in the states of Illinois and Missouri in co-ordination with the Chicago Alton Railroad Company." By its application herein the transportation company sought permission to operate motor busses as a common carrier between St. Louis and Kansas City on Missouri-U.S. Highway No. 40 serving all intermediate points thereon. The application states, that the Chicago Alton Railroad is an "old, established steam carrier," operating between Kansas City, Missouri, and St. Louis, Missouri, "and intermediate cities, towns and villages" and that the commission had theretofore determined that "public convenience and necessity required the operation of a motor bus line on substantially the same route as herein set forth; that the Chicago Alton Railroad is for a considerable distance, paralleled and intersected at numerous points by U.S. Highway No. 40; that the construction of U.S. Highway, No. 40 and the operation of motor busses thereon, has taken away from said railroad in the community which it has served as a pioneer carrier for a great number of years and helped to build up and sustain, and has large investments, a substantial part of its passenger traffic, making necessary, if the operation of motor busses is a public convenience and necessity on said highway, the operation of a motor bus line in coordination with said railroad as herein prayed, so that the community served will have sufficient, reliable, dependable, *Page 5 
economical and permanent transportation service by rail and motor bus, at reasonable cost; that reasonable consideration to the transportation furnished by rail by the Chicago Alton Railroad requires that if motor bus transportation on U.S. Highway, No. 40 between Kansas City, Missouri, and St. Louis, Missouri, and intermediate points is a public convenience and necessity, that your petitioner be given the right to furnish the same in coordination with said railroad service by rail." The application then asks that the transportation company be granted a certificate of public convenience and necessity to operate a motor bus line on Highway No. 40 as therein set out. At the hearing before the commission the granting of a certificate was protested by the Wabash Railway Company, the St. Louis Public Service Company, the Yelloway, Inc., and the Purple Swan Safety Coach Lines, Inc.
The Chicago Alton Railroad enters Missouri at Louisiana and runs thence through Bowling Green and Vandalia to Mexico from which point a branch line runs south through Fulton to South Cedar City. From Mexico its railroad lines continue to Kansas City passing through Centralia, Higbee, Slater, Glasgow, Marshfield, Higginsville, Odessa and other towns and villages. Its St. Louis and Kansas City trains are run over the Chicago-Burlington Quincy tracks between Mexico and St. Louis. It runs two passenger trains each way between Kansas City and St. Louis daily. Missouri-U.S. Highway, No. 40 over which the Chicago Alton Railroad Co., through its subsidiary, the applicant herein, seeks permission to operate motor busses, is the shortest and most direct cross-state highway connecting St. Louis and Kansas City, the distance between the two cities by this route being 258 miles. The cities of Wellston, St. Charles, Warrenton, Columbia, Boonville and Odessa and numerous other towns and villages are served by Highway No. 40. The Chicago Alton Railroad does not directly contact and serve any of these towns and cities except at the town of McCredie in Callaway County, the branch line of the Chicago Alton running south from Mexico to South Cedar City intersects the highway and at Odessa, about forty miles from and east of Kansas City the Chicago Alton line from Louisiana, Missouri, through Mexico to Kansas City contacts the highway and from that point parallels the highway for some distance serving the territory between Odessa and Kansas City. The St. Louis Public Service Company's lines over which a regular schedule of street car service is maintained parallels the highway from St. Louis to Wellston and St. Charles. The St. Louis Public Service Co., also serves this territory with motor busses. The protestant, Wabash Railway Company's line of railroad from St. Louis to Kansas City closely parallels Highway No. 40 from St. Louis to New Florence in Montgomery County from whence it runs in a northwesterly direction *Page 6 
through Mexico and Centralia. From St. Louis to High Hill in Montgomery County the Wabash serves the same cities, towns and villages served by Highway No. 40 between those points. A Wabash branch line runs from Centralia to Columbia. The Missouri-Kansas Texas Railroad also runs into Columbia. The evidence shows that inclusive of the trains of the two railroads and all motor busses operated by certified motor carriers between St. Louis and Columbia there are seventeen passenger trains and busses operating daily, each way, between Columbia and St. Louis and fourteen passenger trains and busses operating each way daily between Columbia and Kansas City. The schedule and number of passenger trains operated by the Missouri Pacific Railroad Company in and out of Boonville is not shown by the evidence but it appears that eleven certified motor busses are operated each way daily between Boonville and Kansas City over Highway 40 and ten between Boonville and St. Louis. It was stated in the testimony that in addition the Missouri Transit Company operates motor busses, the number and schedules thereof not being shown, between Boonville and Columbia. It appears that a motor bus line referred to as the Odessa-Kansas City Bus Line operates between Odessa and Kansas City though the number of daily busses and the schedules are not shown. The evidence is that ten large, well equipped, through, certified motor busses were operated, each way daily, on regular schedules, as common carriers of passengers, over Highway No. 40 between Kansas City and St. Louis serving all intermediate points on that route and that five railroads, the Wabash, Missouri Pacific, Chicago-Rock Island Pacific, Chicago Alton, and Chicago-Burlington Quincy, operate a total of thirteen passenger trains each way daily between St. Louis and Kansas City making twenty-three separate movements of passenger carrying units from St. Louis to Kansas City and Kansas City to St. Louis daily. Applicant's evidence was that the Chicago 
Alton Railroad had suffered losses in its revenues derived from the transportation of passengers and the decrease in passenger business was attributed in part to the operation of motor bus lines on state highways. It was shown by the testimony of witnesses for applicant and by exhibits filed that the Chicago 
Alton Railroad Company was a pioneer in railroad transportation in Missouri; that it had been engaged in operating railroads in this State for fifty years, owned railroad property in this State valued at more than $11,000,000 upon which it annually paid taxes of more than $100,000 and employed in this state an average of 1500 persons. Witnesses explained the manner in which the operation of a system of motor busses by a railroad company could be coordinated with train service with resultant advantage to both. The Chicago Alton Railroad through its subsidiary, the applicant transportation company, proposed to put into *Page 7 
operation a comprehensive system of motor bus transportation, so planned as to coordinate with and supplement its railroad service, in an effort to recoup losses sustained in the transportation of passengers by train and at the same time establish itself in that field of passenger transportation. It was urged that the operation of the proposed additional bus line over Highway No. 40 between St. Louis and Kansas City serving all intermediate points would afford the public needed and convenient additional transportation facilities. The evidence offered by protestant, Wabash Railroad Company, by testimony of witnesses and numerous exhibits, was that the Chicago Alton Railroad Company was seeking by its subsidiary to establish new lines of passengers service to cities and towns and other territory which its railroad lines did not directly reach and serve but which are directly and adequately served by the Wabash Railroad, referring to the city of Columbia and all points on Highway No. 40 between St. Louis and New Florence; that it had suffered a heavy decrease in passenger business on its trains between St. Louis and Kansas City; that its trains between St. Louis and Kansas City had a daily seating capacity of 1182 passengers but the daily average of passengers carried was 237; that the certified motor busses then operating on Highway No. 40 were adequate and sufficient to meet all the needs and requirements of the public desiring to travel by motor busses between St. Louis and Kansas City and between intermediate points. On behalf of the protestants the Yelloway, Inc., and the Purple Swan Safety Lines, Inc., both certified motor carriers operating over Highway No. 40 between St. Louis and Kansas City, the evidence shows that each company operated five large well equipped busses each way daily between the two cities, upon regular schedules, at convenient intervals and that said busses served all intermediate points making ten through busses each way daily; that in addition to the schedule for through busses one bus leaves Columbia for St. Louis and one for Kansas City daily making eleven busses out of Columbia for Kansas City and St. Louis daily serving all intermediate points; that the busses carry on an average less than half of their capacity; that the motor carriers are equipped and in a position to transport a much larger number of passengers should the travel by motor busses over this route increase; that their schedules are so arranged as to afford bus service at convenient intervals along the entire route; that the service afforded is adequate and sufficient to meet the needs and demands and serve the convenience of the public and that for a period of approximately four months next preceding the filing of applicant's petition herein there had been a decrease in passengers carried by motor busses on this route and revenues derived therefrom. Though numerous witnesses from various points in the territory served by Highway No. 40 testified, no complaint *Page 8 
was made as to the quality of service rendered by the certified motor carriers operating on that highway nor was there complaint that such service was not entirely adequate and sufficient to meet the present public demands and convenience.
In its conclusion and finding the commission states that applicant predicates its application for a certificate of convenience and necessity upon two grounds: (1) "Public convenience and necessity;" (2) "A natural right to extend the service of the railroad by means of motor bus transportation to retain its transportation business." The commission then holds:
"In regard to serving public convenience and necessity, the Commission is of the opinion that there is nothing in this record to indicate that the needs and convenience of the traveling public along State Route U.S. 40 are not already adequately served by the existing modes of transportation. The Commission is of the further opinion that there is nothing in the record to indicate that the railroads and motor bus companies serving this route are not in a position to handle a vastly increased travel should it be offered.
"In regard to the second point set out above, the Commission is of the opinion that the railroads should be granted a preference in the extension of their service, by means of motor bus transportation, for the purpose of retaining their transportation business. However, in the present instance the route over which applicant proposes to operate does not parallel except in the most general way, and with the further exception of 40 miles from Kansas City east, any part of the route traversed by the Chicago and Alton trains between Kansas City and St. Louis. In addition it will enter into direct competition with the suburban and local traffic of other railroads operating through this territory and, though protecting the revenues of the Chicago and Alton Railroad, it will undoubtedly decrease the passenger revenues of said railroads.
"The Commission realizes to the full the absolute necessity of the steam railroads to the continued well-being of our State and is in sympathy with their efforts to prevent loss of passenger and freight traffic. In considering the application herein, the Commission cannot ignore the existing modes of transportation. In choosing State Route U.S. 40 the applicant failed to select routes which would more nearly parallel its present operations and supplement or substitute for its present service. By the selection of the route herein applied for, applicant's only right would be that of another motor carrier applying for authority to give service upon State Route U.S. 40 and the Commission, though it is of the opinion that said applicant is fully competent to give adequate and efficient motor bus service, must give consideration to the other modes of transportation thereon. As found above these are adequate for all present needs. *Page 9 
The Commission finds that the application herein should be denied."
Respondent (relator below) thereupon obtained "a writ ofcertiorari or review" from the Circuit Court of Cole County as provided for by Section 5234, Revised Statutes 1929. That court upon a review of the proceedings had before the commission set aside the order of the commission denying the certificate of convenience and necessity applied for and "remanded the cause to the commission for further proceedings" on the ground "the order of the commission is unreasonable and unlawful." The case then came to this court on the commission's appeal.
The issuance by the Public Service Commission of a certificate of convenience and necessity is a prerequisite to the establishment and operation of motor carrier service (Secs. 5264-5267, R.S. 1929) and "the power to grant, or to refuse to grant to a public utility a certificate of convenience and necessity is committed to the discretion of the Public Service Commission, within defined limits and not to the circuit court or to this court." [State ex rel. Detroit-Chicago Motor Bus Company, Inc., v. Public Service Commission, 324 Mo. 270,23 S.W.2d 115.] Upon this review the question is not whether the court, if the matter were before it, would make the same order made by the commission but only whether the order as made by the commission is reasonable and lawful. [Sec. 5234, R.S. 1929.] To justify a reversal of an order of the commission falling within its discretionary power on the ground that such order is unreasonable it must appear that the action of the commission was arbitrary or without reasonable basis and the burden of showing that the commission's order refusing a certificate is unreasonable or unlawful is upon the applicant, the respondent in this case. [Sec. 5247, R.S. 1929.]
The statute (Sec. 5267, R.S. 1929) provides for a hearing by the Public Service Commission upon an applicant's petition for a certificate to operate as a motor carrier at which persons interested in or who would be affected by the issuance of such certificate may offer testimony "for or against the granting" thereof. The same section of the statute then provides: "If the commission shall find from the evidence that public convenience and necessity will be promoted by the creation of the service proposed, or any part thereof, as the commission shall determine, a certificate therefor shall be issued. . . . In determining whether or not a certificate of convenience and necessity should be issued, the commission shall give reasonable consideration to the transportation service being furnished by any railroad, street railway or motor carrier, and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout twelve months of the year and the effect which such proposed transportation service may have upon other forms *Page 10 
of transportation service." Refering to the foregoing statutory provision this court said in State ex rel. Detroit-Chicago Motor Bus Company v. Public Service Commission, supra: "It will be noted that the commission's discretion is to be controlled by three principal considerations: (1) The transportation service being furnished by other carriers; (2) the permanency and continuity of the proposed service; and (3) the effect which the proposed service may have upon other existing forms of transportation service. The statute in this respect is in complete harmony with the general principles which obtain as to state regulation of public utilities." Applying the first and third considerations which are specifically enjoined upon the commission to the evidence in this case showing that adequate, sufficient and convenient service for the transportation of passengers between St. Louis and Kansas City and between points on Highway No. 40 was fully provided by the existing and established street car and railroad lines and certified motor carriers and that such carriers were equipped and able not only to efficiently meet the present demands and requirements and serve the convenience of the traveling public but also to carry a much larger volume of passenger business than was then being carried over their lines we cannot hold with the circuit court that the order of the commission denying the applicant a certificate of public convenience and necessity is either unreasonable or unlawful.
One contention made by respondent before the commission and urged upon review is that the Chicago Alton Railroad Company has for many years been a common carrier of passengers by rail with large property holdings in this State, that its passenger business has in recent years been greatly reduced by reason of the construction of highways and the increased travel by private automobile and public motor carriers thereon and that such considerations should control the determination of its application through its subsidiary for a certificate of public convenience and necessity and require that the certificate be granted as a matter of right. But as we have pointed out, under the statute in passing upon an application for a certificate the essential question to be determined by the Public Service Commission is whether or not the operation of the proposed motor carrier service will promote the public convenience and necessity and in the determination of that question the commission is required to take into consideration the transportation service then being furnished "by any railroad, street railway or motor carrier" and "the effect which such proposed transportation service may have upon other forms of transportation service." In the case of conflicting applications by a railroad company through its subsidiary and an independent motor carrier for a certificate to operate a proposed *Page 11 
motor bus line over a highway through territory already directly served by the railroad company lines and over which no certified motor carrier operated the considerations urged by the railroad company would become important, if not controlling. In such a case the Public Service Commission indicates in its report made herein that the railroad company would be accorded "a preference." "We have no such situation in this case. Here we have duly certified motor carriers already in the field, furnishing adequate and satisfactory service willing and able to furnish any additional facilities and service which may be needed or which the commission may order." [State ex rel. Mo. Pacific Railroad Company v. State Public Service Commission (Mo.),327 Mo. 249, 37 S.W.2d 576.]
The hearing before the Public Service Commission was in December, 1927. On March 10, 1928, the report and order of the commission was made and issued. On the 19th day of March, 1928, applicant filed a motion for a rehearing which was overruled by the commission on the 13th day of September, 1929. Thereafter on the 10th day of October, 1929, applicant filed a motion denominated as a "motion to set aside the order of the Public Service Commission overruling applicant's motion for a rehearing" which motion was by the commission sustained on the 14th day of October, 1929, at which time it was ordered that the motion for a rehearing "stand on the docket of this commission in full force and effect for further consideration." The commission then caused notice to be served on all the interested parties that the "case was set for oral argument on Friday, November 22, 1929." The proceedings had on November 22, 1929, as shown by the record are somewhat confusing but it appears that the commission attempted to confine the proceedings at that time to a consideration of applicant's motion for a rehearing. However applicant was permitted to introduce into evidence an order of the commission made December 28, 1927, showing that the name of the Purple Swan Safety Coach Lines, Inc., had been changed to Pickwick-Greyhound Lines, Inc., and also an order of the commission made February 27, 1929, approving the transfer of the certificate of public convenience and necessity held by The Yelloway, Inc., to the Pickwick-Greyhound Lines, Inc. At the conclusion of the oral arguments and other proceedings had on November 22, 1929, upon applicant's motion for a rehearing same was by the commission overruled. The fact alone that it was shown that after the finding and report of the commission was made in this case and its order issued but while the motion for rehearing was pending one of the two certificated motor carrier corporations operating on Highway No. 40 at the time the application herein was filed and at the time of the hearing had acquired, with the approval of the commission, the certificate of the other corporation, *Page 12 
is now urged here by respondent as a ground for sustaining the judgment of the circuit court holding the order of the commission to be unreasonable and unlawful. The order of the commission is based upon facts developed by the evidence introduced at the hearing upon the merits, which were the facts before the circuit court and now before this court for review as no other evidence was subsequently offered or tendered which altered in any particular the situation, shown by the evidence at the hearing upon the merits, as to the transportation facilities and the extent, convenience and sufficiency thereof, serving the territory involved, except that one of the motor carrier corporations had acquired the certificate of the other and was operating the motor bus lines formerly operated by the two corporations.
Upon review of an order of the Public Service Commission refusing a certificate of public convenience and necessity if the court finds the order of the commission to be neither unlawful nor unreasonable it should affirm the order State ex rel. Pacific Railroad Company v. Public Service Commission, supra. Applying to the evidence in this case the controlling considerations imposed by statute we do not find the order under review either unlawful or unreasonable. Therefore the judgment of the circuit court is reversed and the cause remanded with directions to that court to enter its judgment affirming the order of the commission.Sturgis and Hyde, CC., concur.