R. P. SMITH, Chaffee Building & Loan Association, Southeast Missouri Food Dealers Association, Cape Girardeau Central Trades Union, and Cape Girardeau Carpenters Union, Appellants,

v.

PUBLIC SERVICE COMMISSION of Missouri, Respondent.

No. 48516.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1961.

R. P. Smith, Cape Girardeau, for appellants and pro se.

Glenn D. Evans, Gen. Counsel, Thomas J. Downey, Asst. Gen. Counsel, Jefferson City, for respondent Public Service Commission.

Oliver & Oliver, by Jack L. Oliver, Cape Girardeau, for Missouri Utilities Co.

HOLMAN, Commissioner.

This is an appeal from a judgment of the Circuit Court of Cole County which affirmed an order of the Public Service Commission of Missouri approving a rate schedule for electric energy furnished by Missouri Utilities Company to its customers in a seven-county southeast Missouri area. The approved schedule was designed to produce an increase of approximately $540,000 in the annual gross revenues of the Company. The appellants (named in the caption) are apparently customers of the utility. We have appellate jurisdiction because of the amount in dispute. Smith v. Public Service Commission of Missouri, Mo.Sup., 336 S.W.2d 491.

Missouri Utilities Company furnishes electrical energy at retail to forty-two communities and adjacent areas, and at wholesale to two communities in the territory here involved. Its generating facilities furnish 68% of its energy requirements and the remaining 32% is purchased, primarily from Union Electric Company. The Company also has an electric distribution system serving a portion of six counties in central Missouri. There is no physical integration between the central and southeast Missouri systems. It also operates a water system at Cape Girardeau and furnishes gas service in various communities in Missouri. As indicated, this proceeding involves only the electrical rates applicable to the southeast Missouri operations of the Company. A number of the cities and towns located in the area protested the increase and their attorneys appeared before the Commission at the various hearings but none of the cities appealed from the order involved.

The amount of the increase sought in the application (filed July 27, 1959) was $608,-157. The Commission, by its order, allowed the amount sought after deducting one item of expense which it did not consider proper. That item of $65,000 represented an increase in franchise taxes which the Company had reason to believe would be levied by the cities of the area in the event the rate increase was approved.

There had been no appreciable increase in the rates here involved since 1925. One of the officials of the Company, T. F. Walz, Jr., testified that the increased revenues had not kept pace with the increased expenses and hence there had been a continuing decline in earnings. He further stated that anticipated construction requirements during the five-year period following the date of the application would entail expenditures totaling $5,700,000; that most of said sum would have to be obtained by the sale of long-term securities, and that "the company will have to keep its earnings up in order to make its securities attractive to the investors."

J. E. Flanders, a public utility consultant, was employed by the Company "to make the necessary studies and to prepare exhibits to show the Company's earnings under its present rates, to determine what the Company's earnings should be, and to prepare suggested rates designed to yield the gross revenue necessary to enable the Company to earn a reasonable return on the value of its property used in supplying electric service in its southeast division." His testimony and exhibits indicate that on December 31, 1958, the value of the Company's electric plant was (1) $10,863,217 on the basis of original cost less depreciation, (2) $17,729,045 on the basis of "trended" (present day cost) value, and (3) $14,514,713 on the basis of estimated fair value. According to Mr. Flanders the rate of return which the Company received upon its in-

vestment for the year 1958 was 4.78% when computed on the "net plant" basis and 3.65% on the fair value basis. The adjusted net plant. rate base arrived at by the staff of the Commission was $11,215,-870.

In its order of January 21, 1960, the Commission made findings and conclusions as follows: "[T]hat Applicant's presently effective rates for electric service in Southeast Missouri will not yield sufficient revenues to enable Applicant to perform the functions with which it is charged and remain financially healthy. * * * In order to make its securities attractive to prospective purchasers, Applicant's earnings must yield a higher rate of return than is now being realized. * * * [T]hat for the purposes of this case the fair value of Applicant's electric plant in service, plus material and supplies, etc., is $13,700,000. * * * [T]hat the pro forma income statement * * * should be adjusted" by "elimination from the revenues, to be provided by the proposed increased rates, of approximately $65,000 included therein for the purpose of compensating for the increased franchise tax rates" which would result in a "net operating income of $743,-602.38" and "would yield a rate of return of 5.43% per annum on the $13,700,000 fair value rate base hereinbefore determined by the Commission to be appropriate and would yield a rate of return of 6.63% per annum on the net original cost rate base of $11,215,870.00. The Missouri Utilities Company will be authorized to file for the approval of the Commission revised schedules of rates for electric service in Southeast Missouri, calculated to increase gross revenues by approximately $543,000 when applied to sales during the year 1958."

The Company filed its revised schedules of rates and they were approved in an order entered on January 30, 1960. Thereafter, upon motion of appellants a rehearing was granted to consider the revised schedule, particularly as concerned the question of discrimination in the rate applicable to commercial power customers.

That hearing was held and the schedule of rates was again approved in a supplemental order entered on April 7, 1960. That order contained findings as follows:

"The Company by its Exhibit No. 8 shows that its annual revenues under the new rates will be increased by $539,985.00. This will amount to an increase of something like 15.2% for its Southeast Missouri system. Exhibit No. 8 also shows that the residential service under the proposed rates will increase the revenues something like 15.4%. Commercial service will be increased slightly over 20% and commercial power about 27%. Industrial power would be increased something like 26.2%. The Commission is conscious of the fact that on the percentage basis the commercial and industrial rates are increased a greater amount than the residential service, however, a percentagewise increase straight across the board if followed in fixing new rates does not in most instances bring about an equitable distribution of the increased costs. For example, an air-conditioning service does not improve the class or system load factor for either a commercial or residential consumer or for a commercial power consumer. This is a seasonable service and does not earn as low a rate as most other services furnished for commercial and residential use. The other usage of the service is a year round service and as a classified service earns a lower rate than air-conditioning service which to date is in use only three to five months in the year.

"In designing rate schedules the cost of furnishing those new services should be reflected in the rates. A percentagewise basis generally requires a greater increase because of the short hour usage. In comparing commercial usage of air-conditioning service with similar residential service it should be kept in mind that commercial usage is, many times, on an eight-hour basis, whereas domestic usage will approach twenty-four hour usage during the air-conditioning season * * *."

Upon this appeal the appellants contend that "(1) The order of the Public Service Commission, affirmed by the circuit court, is erroneous in that it approves a rate schedule for electric service which is discriminatory," and (2) "the order of the Public Service Commission, affirmed by the circuit court, is erroneous in finding without substantial evidence to support such finding, that net revenues of the utility were declining under rates in effect prior to the increase ordered."

"Our function is not to substitute our judgment for that of experts in the field of rate making, but rather to determine whether the experts' order was lawful and reasonable. 'In a question of rate making there is a strong presumption in favor of the conclusions reached by an experienced administrative body after a full hearing * * *.' State ex rel. and to Use of City of St. Louis v. Public Service Commission, 326 Mo. 751, 771, 34 S.W.2d 507, 515. 'Upon this review, the question is not whether the court, if the matter were before it, would make the same order made by the commission, but only whether the order as made by the commission is reasonable and lawful. * * * To justify a reversal of an order of the commission falling within its discretionary power on the ground that such order is unreasonable, it must appear that the action of the commission was arbitrary or without reasonable basis, and the burden of showing that the commission's order * * * is unreasonable or unlawful is upon the' appellants here. State ex rel. Alton Transp. Co. v. Public Service Commission, 330 Mo. 1, 9, 49 S.W.2d 614, 617 (1–4); Section 386.430. 'In all trials and proceedings growing out of the exercise of the powers of the commission before the courts the rates and schedules ordered by the commission are prima facie lawful and reasonable, and the burden of proof is upon the party seeking to set aside "any determination, requirement, direction or order of said commission" * * *. The order of the commission fixing the value of the company's property, the rate which it is allowed to earn on that property, and the rates to consumers are prima facie reasonable and lawful, * * * *.' State ex rel. City of St. Louis v. Public Service Commission, 329 Mo. 918, 927, 47 S.W.2d 102, 104 [1, 2]." State ex rel. City of West Plains v. Public Service Commission, Mo. Sup., 310 S.W.2d 925, 933.

█ The contention of appellants that the revised rate schedules are discriminatory is primarily directed to rates coming under the classification of commercial power and is based upon the fact (1) that the greater percentage of increase was made in that category, and (2) that in making the revision of rates to comply with the $65,000 reduction in proposed revenue no reduction was made in that classification.

It is true that the percentage increase in rates applicable to customers coming under the classification of commercial power is considerably larger than the increase applied, for example, to residential service. However, that fact alone does not indicate that the commercial power rate is unfair or unreasonable or that there was unlawful discrimination. It may well have been that the old rate applicable to commercial power was much too low as compared with the rates charged in other categories. "A discrimination as to rates is not unlawful where based upon a reasonable classification corresponding to actual differences in the situation of the consumers or the furnishing of the service; * * *. In accordance with the foregoing principles, valid reasons may exist for different rates for current furnished for lighting purposes from that for power purposes. A substantial difference constituting a reasonable basis for classification may be found in the time of the use of the service or the manner of service. * * * [T]he reasonableness of the basis of the classification must appear; and whether a discrimination is unlawful and unjust or the circumstances substantially dissimilar is usually a question of fact." 43 Am.Jur., Public Utilities and Services, § 178, pp. 689, 690.

■ Whether the higher precentage increase for users of commercial power constituted unlawful discrimination is a question of fact and the burden is upon the appellants to point to evidence which would warrant the conclusion that there was such discrimination. This they have wholly failed to do. However, in considering the reasonableness of the higher percentage increase we find testimony indicating that such was imposed because (1) the Company. must at all times be prepared to meet a high demand which is often used only occasionally, or, stated another way, the customer must pay for the privilege of being able to put a heavy load on the line at any time, and (2) many of the commercial power customers use the service only a portion of the .day or for a short time during the year. Examples cited were the use of commercial air-conditioners for 8 hours per day in many instances as compared to frequent residential use for 24 hours daily, and the operation of cotton gins for only a few weeks during the year. It seems clear that the maintenance of facilities to meet possible load demands which are utilized infrequently is usually unprofitable to the utility.

The $65,000 reduction in the proposed rates was ordered when the Commission eliminated an item of expense in that amount which had originally been included to meet anticipated increases in franchise taxes. When the schedules were revised no reduction was made in the commercial power rates. Two reasons were assigned by the witnesses for the failure to so reduce. The first was that a large percentage of these customers are located outside of the cities in the area and there is no franchise tax applicable to them. Since the item eliminated had been originally included to provide for payment of anticipated franchise taxes (and added to the proposed rates of customers located in cities) it was thought proper to apply the reduction to classifications primarily located in municipalities. The second reason advanced was that because of the "low load factor" heretofore discussed the ·original rates proposed

for the commercial power classification were fair and reasonable as compared to other classifications without any reduction on account of the item in question.

■ The Commission carefully considered the revised schedule of rates at the rehearing heretofore referred to and concluded that said rates were "not discriminatory or unduly preferential." There is a strong presumption in favor of the correctness of that conclusion and we are not prepared, upon the evidence before us, to say that the Commission erred in so finding.

■ Appellants' second contention is that there was not sufficient substantial evidence to support the finding that the net earnings of the Company were declining under the rates in effect prior to the increase ordered. That contention actually relates to a nonessential issue. The Company was not required to prove that its earnings were declining. In a general way it may be said that the vital issue in this case was whether the proposed increased rates were just and reasonable from the standpoint of the public and at the same time sufficient to enable the Company to maintain proper service and earn a fair return upon its investment. State ex rel. Hotel Continental et al. v. Burton, Mo. Sup., 334 S.W.2d 75.

■ In support of their contention that the Company's net earnings were not shown to have decreased and, in effect, that the increase in rates should not have been granted, appellants point to the fact that (1) the Company's bonds have always sold at par, (2) dividends have been paid each year on the common stock, (3) the earned surplus has increased regularly, and (4) in six of the ten years preceding the application the net income of the Company had increased. These facts are not reliable proof that the instant rate increase was not necessary or reasonable because they relate to the financial condition of the Company as a whole and include services and areas not here involved. We think that a ref-

erence to our brief statement of facts will disclose that there was ample evidence to support the findings and orders of the Commission. Appellants have failed to sustain the burden of showing that the orders entered by the Commission in this case were unreasonable or unlawful.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.