STATE of Missouri ex rel. MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Appellant,

v.

The PUBLIC SERVICE COMMISSION of the State of Missouri, and Tyre W. Burton, E. L. McClintock, Frank J. Iuen, William Barton, and Frank May, Respondents.

No. 50119.

Supreme Court of Missouri,

Division No. 2.

May 11, 1964.

**460**

R. W. Hedrick, Jr., Jefferson City, William A. Thie, Denison, Tex., for appellant.

Glenn D. Evans, Gen. Counsel, Thomas J. Downey, Asst. Counsel, H. Burks Davis, Jefferson City, for respondents.

STOCKARD, Commissioner.

On October 3, 1961, the Missouri Public Service Commission (hereafter referred to as the "Commission") issued its order suspending the provisions of Item 275, Supplement 10 to the Southwestern Lines Freight Tariff 141–A for Missouri-Kansas-Texas, Railroad Company (hereafter referred to as "M. K. & T.") and ordered a hearing for the "determination of the propriety of [its] provisions." By its Report and Order the Commission directed M. K. & T. "to cancel * * * the provisions in Item 275," and on appeal the Circuit Court of Cole County affirmed that order. M. K. & T. has appealed to this court.

We are first faced with the question of the jurisdiction of this court. M. K. & T. purports to invoke its jurisdiction on the ground that there is involved in this appeal the construction of the Constitution of this state and of the Constitution of the United States. While perhaps not necessary for a determination of the issue of jurisdiction, it will be helpful to set forth to some extent the evidence in this case.

Item 275 of the tariff provides as follows:

"Applicable Only on Intrastate Traffic Moving Between All Stations in Missouri on the Missouri-Kansas-Texas Railroad Company Except Boonville, Columbia, Eldorado Springs, Fayette, Kansas Ciy, Moberly, Nevada, Pilot Grove, Sedalia, and St. Louis, Missouri.

"Less-than-carload freight will be handled only when loaded with carload freight or in lots of 6,000 lbs. or more (Note 1) to one consignee or from one consignor.

"Note 1.—Will also apply when shipped in lots of less than 6,000 lbs. provided freight charges are assessed on basis of a minimum weight of 6,000

lbs. On mixed less-than-carload shipments consisting of articles subject to varying weights and weighing less than 6,000 lbs., the deficit or difference between the actual weight and the minimum weight of 6,000 lbs. will be charged for at the lowest less-than-carload rate applicable to any article in the mixed shipment."

This proposed tariff would affect less-than-carload (L.C.L.) intrastate freight at thirty-six stations in Missouri. While the precise meaning of Item 275 is not readily apparent from reading it out of context, its purpose is to authorize M. K. & T. to establish as a minimum rate for all intrastate L.C.L. shipments below 6,000 pounds the rate for a 6,000 pound shipment at all stations in Missouri other than at those stations excepted therefrom. M. K. & T. does not transport all L.C.L. intrastate shipments by rail. Such shipments consigned to points between St. Louis and Franklin, Missouri, are transported by motor common carrier. Those shipments from St. Louis to points west of Franklin are moved by rail in truck trailers loaded on what is known as T. T. X. cars and then are delivered to the point of consignment by Coordinated Transportation Company, a wholly owned subsidiary of M. K. & T. which operates tractors and trailers in over the road truck service in interstate and intrastate commerce over specific routes, that is, from Franklin to Eldorado Springs via Sedalia, Clinton and other intervening stations, and from St. Paul, Kansas, to Eldorado Springs, Missouri, via Nevada, Missouri, and other intervening stations. Only L.C.L. shipments between St. Louis, Franklin, Columbia, Moberly and Fayette are transported by M. K. & T. in rail boxcars.

The evidence established that since 1957 there has been a decided decrease in tonnage of L.C.L. intrastate shipments handled by M. K. & T., and as a result the frequency of service has been affected. Prior to January 1, 1961, two motor tractors and trailers operated out of Franklin on a five day schedule. Thereafter, the equipment was reduced to one tractor and trailer, and after August 7, 1961, the service was reduced to two days a week. During the first eight months of 1961, twelve of the affected stations did not forward or receive any L.C.L. shipment, and eleven of the affected stations had an average of less than two L.C.L. shipments per month. Detailed cost studies were placed in evidence which we need not attempt to set out in full. It is sufficient to say that the L.C.L. intrastate business at the affected stations had declined to the extent that subsequent to August 7, 1961, for every $1.97 collected by M. K. & T. for L.C.L. shipments it spent $8.48. In addition the loss of M. K. & T. over its entire system from L.C.L. freight was in excess of $259,000, and in recent years M. K. & T. in all its operations has operated at a deficit.

At the hearing the Commission did not attempt to contradict the evidence of M. K. & T. as to the cost of maintaining the intrastate L.C.L. freight service, or the figures of M. K. & T. concerning its deficit operations. The substance of the evidence of the Commission was that the proposed tariff would result in a discrimination in rates between the excepted and the affected stations. One of the exhibits, prepared by a Commission staff member, shows (1) the present tariff, (2) the proposed tariff, and (3) the tariff by motor common carrier for a "Class 70" commodity to be shipped from St. Louis to twelve of the affected stations and the eight excepted stations for L.C.L. shipments of 100, 500, 1,000, 2,500 and 6,000 pounds. This exhibit shows, for example, that for a 100 pound "Class 70" item moving from St. Louis to Nevada, Missouri (an excepted station), the present tariff is $4.00, the proposed tariff would be $4.00, and the motor common carrier tariff is $3.30. However, for a 100 pound "Class 70" item moving from St. Louis to Walker, Missouri (an affected station which is only a few miles from Nevada) the present tariff is $4.00, the proposed tariff would be $91.20, and the motor common carrier tariff is $3.30. As the size of the L.C.L. shipment

increases the difference between the present and proposed tariff decreases, and for a 6,000 pound shipment of a "Class 70" item the tariffs are as follows: present tariff, $91.20; proposed tariff, $91.20; and for motor common carrier, $99.00.

In its Report and Order the Commission recognized that "a difference in circumstances and conditions may warrant higher or lower freight charges for various services at certain localities than at others," but the Commission concluded that "when L.C.L. freight service is provided between rail stations by means of the same facilities and over the same routes, it should be provided to all stations and types of traffic on the same relative level of rates and charges," and that a lesser amount of L.C.L. business at certain stations "is not in and of itself a sufficient difference in the circumstances and conditions to warrant a different level of rates and charges." The Commission then ruled that the tariff proposed by M. K. & T. "would be a source of unreasonable prejudice and disadvantage to certain localities and descriptions of traffic as prohibited by Section 387.110 RSMo 1959," and that it should be canceled. In addition, the Commission also concluded and found that the L.C.L. rates and charges to and from all of the stations of M. K. & T. in Missouri "are now on the same relative level and the contribution of each station to the overall cost burden is in proportion to the number and weight of shipments received and forwarded," and that "Under the circumstances * * * the rates and charges to and from certain of [M. K. & T.'s] stations are not insufficient to yield reasonable compensation for the service rendered, and that the present rates are not unjust and unreasonable or otherwise unlawful, and that there is no lawful basis in his record for the Commission to prescribe any other maximum rates and charges to be hereafter observed." We note, however, that in its brief the Commission does not challenge M. K. & T.'s contentions concerning its losses on intrastate L.C.L. shipments, and notwithstanding the above conclusion and finding that the present rates are "not insufficient to yield reasonable compensation," the Commission states in its brief that it "recognized the fact that the evidence offered by [M. K. & T.] might have justified a general freight rate increase for L.C.L. shipments to and from all the stations * * * in Missouri." We note also that in its brief the Commission admits that "discrimination, *ipso facto*, is not unlawful and that under different circumstances and different conditions justifying it there may be a difference in charges, or a discrimination, which is not unlawful;" that if the proposed tariff "applied to all stations on the lines of [M. K. & T.] no one would have reason to complain, all stations are being treated in the same manner;" and that if it can be found "that the conditions and circumstances are different at the stations to which the provisions do not apply * * * [from the conditions] at the stations that come under the provisions of the proposed tariff, then [M. K. & T.] is justified in making a difference in its rates to the different stations."

By its first two points, M. K. & T. contends that the trial court erred (1) in affirming the order of the Commission wherein it found that the present rates and charges for intrastate L.C.L. shipments are not insufficient to yield reasonable compensation for the services rendered, (2) in failing and refusing to find that the proposed charges are compensatory, reasonable and otherwise lawful, and (3) in ordering the proposed tariff to be canceled. M. K. & T. then asserts that for these reasons the Commission denied M. K. & T. the right to assess and collect compensatory freight charges for its transportation services "in violation of Section 387.190 RSMo 1959, and in violation of the provisions of Article I, Section 10 of the Constitution of Missouri [the due process clause], and the [due process clause] of the Fourteenth Amendment to the Constitution of the United States." This is the only manner in which M. K. & T. purports to present an issue requiring or calling for the construction of

the federal constitution or the constitution of this state. We conclude for the subsequently stated reasons that the only issues presented by these points for determination do not call for a *construction* of either of the constitutional provisions cited.

Section 387.190 provides, among other things, that whenever the Commission shall be of the opinion, after a hearing, that the rates of a railroad corporation for the transportation of property within the state "are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in anywise in violation of any provisions of law, or that the maximum rates, fares or charges, chargeable by any such * * * railroad corporation * * * are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall, with due regard, among other things, to a reasonable average return upon the value of the property actually used in the public service and to the necessity of making reservation out of income for surplus and contingencies, determine the just and reasonable rates, fares and charges to be thereafter observed and in force as the maximum to be charged for the service to be performed, * * *." M. K. & T. contends that the Commission violated this statute in two respects, that is, that it found the present rates to be sufficient, and in failing to find the proposed rates to be compensatory, reasonable and lawful. It also contends in a subsequent point that the Commission should have determined what would have constituted lawful compensatory rates.

■ M. K. & T. does not contend that it did not have notice of the hearing before the Commission or that it was denied the opportunity to be heard. No complaint is made concerning the procedure before the Commission or the circuit court. In addition, no attack is made as to the constitutionality or validity of the statutes which provide the jurisdiction and powers of the Commission in a case of this kind. M. K. & T. simply says that by its order, which

M. K. & T. contends violated Section 387.-190, the Commission violated the due process clauses of the state and federal constitutions. It may be that use of the broad phrase "constitutional question" has led to some misunderstanding of the meaning and scope of phrase in Article V, Section 3, Constitution of Missouri, V.A.M.S., that the "supreme court shall have exclusive appellate jurisdiction in all cases involving the construction of the Constitution of the United States or of this state * * *." However, it has repeatedly been held that because a judgment may be erroneous it does not follow that there has been a denial of due process of law. " 'A judgment may be erroneous, yet rendered in due process of law.' " Stegall v. American Pigment & Chemical Co., 263 Mo. 719, 173 S.W. 674.

This court recently had before it a situation similar to that presented here. In State ex rel. Doniphan Telephone Company v. Public Service Commission, Mo., 369 S.W.2d 572, the telephone company appealed from the judgment of the circuit court affirming the order of the Commission, and contended on appeal that by its order directing another company to give telephone service in an area, it was deprived of its property without due process of law and denied equal protection of law. This court had this to say: "Since Doniphan does not complain of any procedural matter affecting due process, and makes no attack upon the validity or constitutionality of the statutes defining the powers of the Commission in this type of case, the only conceivable complaint remaining within the scope of the instant contention is that the Commission exceeded its authority. What Doniphan is really saying is that the Commission did not have the power or authority to make the orders it made. It is not necessary to construe any constitutional provision in order to determine that contention. It may be decided by a construction of the applicable statutes for the purpose of ascertaining whether the Commission exceeded its authority in making the orders. 'The commission is not a court. It is a creature

of the Legislature. Its jurisdiction, powers, and duties are fixed by the statute. The constitutionality of such statute is not attacked. Since the jurisdiction of the commission is fixed by statute, and since the validity of that statute is not attacked, the case may be properly determined by a construction of the statute for the purpose of determining whether or not the commission exceeded its statutory authority. The Court of Appeals has authority to construe the statute for that purpose.' State ex rel. Orscheln Bros. Truck Lines, Inc. v. Public Service Commission, 338 Mo. 572, 92 S.W. 2d 882, 884. See also State ex rel. Harline v. Public Service Commission, Mo.Sup., 332 S.W.2d 940."

M. K. & T. does not assert that the due process clause of either the state or federal constitution grants to it any right it does not have as the result of what it contends to be a proper construction of Section 387.190. In other words, if the Commission acted according to M. K. & T.'s construction of Section 387.190, there is nothing denied it which it contends it is entitled to as a result of the cited provisions of the state and federal constitutions. Therefore, we necessarily conclude that in this case there is no issue requiring the *construction* of the Constitution of this State or of the United States, but only a determination of whether the Commission exceeded its jurisdiction, powers or duties as fixed by statute, and that this court does not have jurisdiction of the appeal on the basis of what is called a "constitutional question."

■ In view of the fact that we have concluded that this court lacks appellate jurisdiction for the reason asserted by M. K. & T., we should determine whether we have jurisdiction for any other reason. The only other possible basis would be that it is a case in which the amount in dispute, exclusive of costs, exceeds the sum of $15,000. Art. V. Sec 3, Constitution of Missouri; Section 477.040 RSMo 1959, V.A.M.S. It has previously been held that an appeal from the judgment of the circuit court approving the order of the Commission authorizing a rate schedule which will yield an annual increase of gross revenue in excess of its minimum jurisdictional amount vests this court with jurisdiction. Smith v. Public Service Commission, Mo., 351 S.W.2d 768; Smith v. Public Service Commission, Mo., 336 S.W.2d 491. However, jurisdiction on the basis of the amount in dispute attaches only when the amount in controversy, independent of all contingencies, exceeds the minimum jurisdictional amount, Hogue v. Wurdack, Mo., 292 S.W. 2d 576, and it cannot be on a basis of mere chance. M.F.A. Mut. Ins. Co. v. Quinn, Mo., 251 S.W.2d 633. The amount in dispute cannot be left to speculation or conjecture. It must affirmatively appear from the record that the amount actually in dispute exceeds the minimum jurisdictional amount. Cooper v. School District of Kansas City, 362 Mo. 49, 239 S.W.2d 509.

■ Assuming that the type of case we have here is included in what properly comes within the "amount in dispute" provision of Art. V, Section 3, of the Constitution, in this case M. K. & T. does not seek a general rate increase to bring in additional gross revenue. Actually it seeks a change in its tariff which will have the effect of reducing its gross receipts, and the issue on this appeal does not in fact involve any amount in dispute. However, if it can be contended that the amount in dispute consists of the amount of the reduction in gross revenue, whether the proposed change in the tariff would at any time result in a reduction of more than $15,000 of gross revenues or result in a net saving to M. K. & T. of any particular amount is a matter based entirely on speculation and conjecture. It cannot affirmatively be determined from the record that the amount in dispute exceeds our minimum jurisdictional amount.

In view of our conclusion that no point is raised which would require a construction of a constitutional provision, and that there is no other basis for vesting appel-

late jurisdiction in this court, we rule that the supreme court is without appellate jurisdiction of this cause.

This case is transferred to the Kansas City Court of Appeals.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.