SUNRAY DX OIL COMPANY,
Plaintiff-Respondent,

v.

Lawrence E. LEWIS and Ethel I. Lewis,
Defendants-Appellants.

No. 52617.

Supreme Court of Missouri,
Division No. 2.

Feb. 12, 1968.

Watson, Ess, Marshall & Enggas, Robert I. Donnellan, Clayton R. Smalley, Kansas City, for plaintiff-respondent.

Rufus Burrus, Independence, for defendants-appellants.

GEORGE P. ADAMS, Special Judge.

Defendants-appellants appeal from a decree ordering them to specifically perform certain obligations undertaken by them under a lease with plaintiff-respondent whereby a tract of a little less than an acre, located in the northeast quadrant of the I–70–Noland Road interchange in Jackson County, Missouri was leased to plaintiff.

On and prior to April 25, 1963, defendants were the owners of a number of acres located in the northeast quadrant of said interchange. On the 10th day of May, 1963, and before the actual construction of said interchange, they executed a "station site lease," dated April 25, 1963, leasing the tract described in said lease to plaintiff for a term of five years at a gallonage rental of one cent per gallon for each gallon of gasoline delivered to said premises by the lessee or its agents, with the further provi-

sion that such rental payments would amount to a minimum of Two Hundred Dollars per month.

Defendants agreed to fill said premises to a grade to be determined by plaintiff, with the cost thereof to be shared on a fifty-fifty basis with plaintiff. Defendants also agreed to construct an "access road" 36 feet in width, running east from the State Highway right-of-way line on Noland Road and abutting the tract along its south boundary, provided "such access road is granted to lessor by the Missouri State Highway Department." There was no provision for plaintiff to share any of the expenses of the construction of this road.

Plaintiff was permitted to use the site "for a motor vehicle service station for the sale of petroleum products and other merchandise customarily handled by such service stations; and for servicing of motor vehicles; and for the conduct of any other lawful business; and the Lessee is hereby given the right to sublease or underlet said premises."

Defendants were prohibited from constructing, maintaining or operating a motor vehicle service station or permitting the sale of motor fuel or other merchandise "customarily handled by such service stations" on any of their premises immediately adjoining or within three hundred feet of the leased tract.

Plaintiff was granted the option of extending the primary term of the lease for four additional successive periods of five years each, at the same rental per month and on the same terms and conditions.

Plaintiff was granted an option to purchase the premises "on the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept."

The lease further provided that it should not become effective until executed by a Vice-President of plaintiff and that "should the Lessee fail to deliver an executed counterpart of this lease to Lessor on or before

ninety days from date hereof, Lessor and Lessee shall be relieved of any further liability to each other."

Under the terms of the lease, the defendants were required, upon plaintiff's request, to furnish plaintiff "complete abstracts of title, or proof of insurable title, certified to date, and such other evidence of title as Lessee may request, for examination."

Within ninety days of the date of said lease, plaintiff, as authorized by the lease, mailed an "executed counterpart" of the lease to defendants.

By the pleadings, the ownership of the premises is agreed to be in the defendants.

In its petition, plaintiff alleged that under said instrument, it was granted a ninety day option to lease the tract described; that the option was exercised by it by executing said lease and delivering the same to defendants within said ninety day period; that defendants refused to recognize the option and refused to deliver to plaintiff satisfactory evidence of their title and refused to perform any of the other duties and obligations undertaken by them "in granting said option and lease."

In Count I, plaintiff sought a judgment declaring "that the option granted by defendants to plaintiff was valid and that plaintiff exercised said option and holds a valid and existing lease on said real estate and is entitled to possession thereof in accordance with the terms and conditions of said lease and for such further relief as may be equitable."

In Count II of its petition, plaintiff adopted all of the paragraphs of Count I and prayed "that the defendants be required to specifically perform said option and lease and that plaintiff have such further relief as may be equitable."

In their Answer, in addition to admitting the ownership of the premises, defendants denied that they were "obligated to recognize the claimed option because none was

granted by them," and denied that they were obligated to deliver any evidence of title to any real property.

Defendants plead further that "if this court should find that the paper writing mentioned by Plaintiff in its petition did in fact constitute an option for ninety days to lease the premises described in said writing that the same is invalid and of no force or effect for the reasons * * *:" (1) there was no consideration for any option; (2) that the description was vague and indefinite and insufficient to enable the location of the area sought to be covered; (3) that "a portion, if not all of the frontage owned by Defendants on Noland Road was contained in an eminent doman (sic) proceeding by the State of Missouri * * * which cause had then resulted in the said Plaintiff (State Highway Commission), obtaining lands of Defendants and in obtaining all of the access said lands had to Noland Road, and that therefore it was impossible for the proposed filling station site to have access to Noland Road * * *;" (4) that the paper writing was indefinite and contradictory; (5) that plaintiff had abandoned its rights under the instrument by rejecting it and making a new and different proposal; (6) that plaintiff was estopped from claiming any rights or benefits by reason of the paper; (7) that it was guilty of laches; (8) that "said paper writing provides for an inequitable and insufficient rental" because defendants would not "be permitted to participate in any of the income derived from the sale of oil 'and other merchandise customarily handled by such service stations; and for the servicing of motor vehicles; and for the conduct of any other lawful business;' or to participate in any business which might be carried on by any sub-lessee of said premises."

In Count I defendants prayed that the court "decree that this Plaintiff has no right, title, interest or estate in or to the lands mentioned in Plaintiff's petition and for such other and further orders, judg-

ments and decrees as to the court shall seem just, meet, equitable and proper."

In Count II of their answer, defendants adopted all of the paragraphs of Count I of the answer, denied the paragraphs of Count II of the petition and prayed that the court "deny the relief sought by the plaintiffs (sic) herein and for such other and further orders, judgments, and decrees as to the Court shall seem just, meet, equitable and proper."

In its reply, plaintiff denied all of the affirmative matters pled in defendants' answer.

By its decree, the Court found the issues generally in favor of plaintiff and against defendants on Counts I and II of the petition and found that plaintiff was entitled to the relief prayed.

With respect to Count I, it decreed specifically "that the option and lease under date of April 25, 1963 and executed by defendants on May 10, 1963, was and is valid; that plaintiff duly exercised such option and holds a valid and existing lease" to the property described in the lease; and that plaintiff was entitled to possession thereof.

With respect to Count II, it ordered defendants to specifically perform their obligations under said lease "including but not limited to the following:" (1) furnish plaintiff with abstract of title or proof of insured title; (2) surrender possession of the premises; (3) cause the property to be filled to a grade acceptable to plaintiff, with the costs to be borne one-half by plaintiff and one-half by defendants; (4) cause construction of access road at defendants' cost 36 feet in width running east from the Interstate 70 State Highway right-of-way line on Noland Road and abutting said real property along its southern boundary line; and (5) secure consents and permits as necessary for lessee's use of said property for service station purposes.

Following the overruling of their motion for a new trial, defendants appealed to this court.

Defendants attempt to invoke the appellate jurisdiction of this court "because the trial court decreed specific performance of a lease of real property for a term of five years, with four five-year renewal options, and by reason of Article V, Sec. 3, of Missouri Constitution, suits directly involving the title to real estate gives this court jurisdiction."

In Plaintiff's brief, no statement is made with reference to the grounds of appellate jurisdiction of this court. Plaintiff apparently agrees that we have appellate jurisdiction.

Before considering the contentions of the parties on the merits of the cause, we must first determine whether we have appellate jurisdiction. This is required even though there is no dispute between the parties and such jurisdiction is conceded by them. It cannot be conferred by agreement or consent. Bock v. Sheahan Investment Company, et al., Mo.Sup., 412 S.W.2d 393, 395(1). The courts of appeals have general appellate jurisdiction but the Supreme Court is limited to the appellate jurisdiction specifically conferred by the Constitution. Article V, Sections 3 and 13, Constitution of Missouri, 1945 V.A.M.S.; Fisher, et al. v. Lavelock, Mo.Sup., 282 S.W.2d 557, 560(1, 2).

In order for an action to involve title to real estate in the constitutional sense, the judgment sought or rendered must directly affect, or operate upon, the title itself—it must adjudicate a title controversy. Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S.W.2d 771, 774(8); Blake, et al., v. Shower, et al., 356 Mo. 618, 202 S.W. 2d 895, 897. A leasehold estate is personal property for purposes of determining appellate jurisdiction. This is because a leasehold was a "chattel real" at common law and no statute has been enacted to convert it to real property for this purpose. Thacker, et al., v. Flottmann, Mo.Sup., 244 S.W.2d 1020, 1023(8–10), and cases there cited. Hence, a controversy concerning a lease-

hold estate, regardless of its duration, does not involve title to real estate so as to confer jurisdiction on this court.

In the instant case all parties concede and agree that title to the premises is in defendants. The title to real estate is, therefore, not involved. Oehler, et al. v. Philpott, et al., Mo.Sup., 253 S.W.2d 179, 180(1). Plaintiff's action, instead of disputing defendants' title, merely endeavors to subject the premises, *as the defendants' property*, to plaintiff's right of possession. Nettleton Bank v. McGauhey's Estate, supra, 2 S.W.2d 774. Title to the premises is not in anywise in dispute.

Even though no further basis for our jurisdiction is asserted, we must, nevertheless, review the entire record to determine if we have appellate jurisdiction on any other grounds.

Does the fact that the lease grants plaintiff an option to purchase the premises bring the case within our appellate jurisdiction?

An option has been defined as "a privilege * * * a right of election to exercise a privilege." Thacker v. Flottmann, Mo.Sup., supra, 244 S.W.2d 1022. An option "is but an offer, at most a contract * * *, which confers a privilege * * *, but which does not in itself transfer an interest or title in land." Farmer v. Littlefield, et al., 355 Mo. 243, 195 S.W.2d 657, 659(3); Fisher, et al., v. Lavelock, supra, 282 S.W.2d 560(5).

The option to purchase contained in the instant lease does not involve title to real estate in the appellate jurisdictional sense.

Under the terms of the lease the defendants agree to furnish plaintiff with evidence of their title. This provision does not make title to real estate involved in the case. It simply enables the plaintiff, before proceeding with the erection of a filling station and appurtenances to satisfy itself that defendants have good title and, consequently, the right to lease the premises.

The decree herein does not affect, or operate upon, defendants' title; it does not adjudicate a title controversy. This is, therefore, not a case "involving * * * the title to real estate" within the Constitution.

Even though title to real estate is not involved, we must continue to search the record to determine if other grounds for our appellate jurisdiction exist.

The only other possible basis would be that the case is one where the amount in dispute, exclusive of costs, exceeds the sum of $15,000.00. Section 477.040, V.A.M.S. What then, is "the amount in dispute" here?

Since a money judgment was not sought, the amount in dispute "must be determined by the money value of the relief to plaintiff, or of the loss to defendant, should the relief be granted, or vice versa, should the relief be denied." Frank Schmidt Planing Mill Co. v. Mueller, et al., 347 Mo. 466, 147 S.W.2d 670, 671(2).

Jurisdiction on the basis of the amount in dispute attaches only when the amount in controversy "independent of all contingencies" exceeds the minimum jurisdictional amount; it cannot be on the "basis of mere chance;" it cannot be left to "speculation or conjecture;" it must "affirmatively appear from the record" that the amount in dispute exceeds the jurisdictional amount. State ex rel. Missouri-Kansas-Texas Railroad Company v. Public Service Commission, et al., Mo.Sup., 378 S.W.2d 459, 464(2); Johnson v. Duensing, et al., Mo.Sup., 332 S.W.2d 950, 956(10, 11); Frank Schmidt Planing Mill Co. v. Mueller, et al., supra, 147 S.W.2d 671(3).

The issues as drawn by the pleadings define the controversy or dispute and are the basis of the "amount in dispute."

There is nothing in the record to show "the value of relief to plaintiff" if the relief is granted or the "loss" to plaintiff if relief is denied. There is nothing in the pleadings, the evidence, or the decree to show what benefits in dollars plaintiff would receive if the lease is held valid or the damages or loss it would sustain if the lease is held invalid. There is nothing from which a monetary value can be determined from the plaintiff's right of occupancy, if successful, or loss thereof, if unsuccessful.

 The fact that plaintiff will have to pay rent for the use of the premises is not to be considered for that is something it would have to pay for the enjoyment of the property (Jackson, et al. v. Merz, 358 Mo. 1212, 219 S.W.2d 320, 321(4). In any event, the only "affirmative" showing of the amount of rent is $200.00 per month, $2,400.-00 per year, or $12,000.00 for the primary five-year period of the lease. Consideration of additional amounts to be paid *if* options for renewals were exercised require speculation and conjecture.

There is nothing in the record to show the "value of relief" to defendants if the decree is reversed. Again the pleadings, evidence and decree do not show what benefit in dollars defendants would receive if the lease is held invalid. The rental value of the premises, other than that provided in the lease itself, is not shown. In what manner and in what sum defendants will benefit from the denial of the relief sought by plaintiff is not made to appear.

Under the lease, defendants were also obligated to furnish an abstract of title or proof of insurable value for examination by plaintiff and they were prevented from constructing, maintaining or operating a filling station within 300 feet of the premises described in the lease. But the record is silent as to the costs of furnishing such evidences of title or what loss or damages, if any, defendants would sustain by not being permitted to construct and operate a filling station within 300 feet of the premises.

 The only expense that defendants will sustain as the result of the controversy or dispute that appears affirmatively from the pleadings, evidence and decree results from their obligation to "fill" the premises to grade and construct the 36 foot access road "provided such access road is granted" by the Highway Department. The cost of the fill was shown to be approximately $14,000.00 with one-half of such expense to be borne by plaintiff, or a $7,000.00 cost to defendants. The cost of the access road (*if* granted by the Highway Department) was shown to be approximately $5,000.00. These expenses aggregate only $12,000 and are, of course, under our minimum appellate jurisdiction.

Against these expenses, defendants will recoup at least the same amount during the primary term of the lease.

There is one more matter that requires attention. Apparently in response to that part of defendants' answer relating to a condemnation proceeding wherein they claimed that all access to Noland Road had been taken and "therefore it was impossible for the proposed filling station site to have access to Noland Road," witnesses were interrogated as to what, if any, access to Noland Road defendants' property would have after construction of the interchange. As noted in more detail later, just what access defendants' property would, or would not, then have to Noland Road does not affirmatively appear. However, defendant, Lawrence Lewis, testified that if the tract described in the lease took their access to Noland Road, defendants' remaining acreage would, in his opinion, depreciate 70% of its original value of $150,000 to $200,000.

It must be borne in mind that the issues, and consequently, the "dispute," consisted of the questions: (1) Did the instrument signed by defendants give plaintiff an option to lease? (2) Was there consideration for such an option? (3) Was the option exercised? (4) If it was a lease, was it invalid because: (a) the description was "vague and indefinite" and "insufficient to

enable the location of the area sought to be covered;" (b) all access to Noland Road had been taken making it impossible for the site to have access to Noland Road; (c) the lease was "indefinite and contradictory;" (d) plaintiff had abandoned its rights under the lease by rejecting it and making a new and different proposal; (e) plaintiff "failed to do anything further with respect" to the lease and was "estopped from claiming any rights or benefits by reason thereof;" (f) plaintiff was guilty of laches; (g) the lease provided "for an inequitable and insufficient rental" because defendants would not share in "income" derived from the sale of oil and other merchandise, for servicing motor vehicles or for the conduct of other lawful business or participate in any business that might be conducted by a sublessee?

It is possible that the "affect," if any, that the lease in question might have had on defendants' remaining land could have been made an issue under a plea that the consideration for the lease was "inequitable and insufficient" because of a depreciation in the value of such remaining land. But such an issue was not presented. The sole basis for a claimed "inequitable and insufficient rental" was because defendants would not be permitted to "participate" in any income derived from the sale of oil and other merchandise, for servicing motor vehicles and the conduct of "other lawful business" or business which might be carried on by sublessee.

■ Considering the limitation of the "dispute" as defined by the issues, it is apparent that defendants' remaining acreage or its value was not "involved in the suit." The test "is not the amount which may be *affected*, but the amount *actually involved* in the suit." In Re Jackson's Will, Mo.App., 291 S.W.2d 214, 218(2); Emerson Electric Manufacturing Company, et al. v. City of Ferguson, et al., Mo.Sup., 359 S.W.2d 225, 228(2). The "original cost or present value" of defendants remaining property "is not the amount in dispute. The property is not being taken." Nemours,

et al. v. City of Clayton, et al., 351 Mo. 317, 172 S.W.2d 937, 938(4).

■ An equally compelling reason why this item may not be considered in determining the "amount in dispute" is because its premise depends entirely upon sheer "speculation and conjecture."

In so far as the record discloses, none of the parties knew whether defendants did or did not have access to Noland Road from the remaining portion of their property or if they did have it, how much they had or where it would be located. As a matter of fact, such information was not even determinable because defendants were still negotiating with the State Highway Department for access. Exceptions had been filed to the award in the condemnation suit and defendant Lawrence Lewis testified that they had "not settled with the Highway Department and what the outcome of that suit and settlement will be will make an entirely different picture in the land and the best use of it." (cf. State ex rel. State Highway Commission v. Harris, et al., Mo. App., 417 S.W.2d 29, 31(5)).

Depending, as it does, upon the uncertainty of what access defendants will eventually have to Noland Road, the opinion testimony of Lawrence Lewis with respect to such depreciation is "entirely conjectural and does not affirmatively show that any definite monetary amount is in dispute." Dunbar, et al. v. Board of Zoning Adjustment, et al., Mo.Sup., 380 S.W.2d 442, 445.

It does not "affirmatively appear from the record that the amount actually in dispute exceeds the minimum jurisdictional amount." This it must. State ex rel. Missouri-Kansas-Texas Railroad Company v. Public Service Commission, et al., supra, 378 S.W.2d 464.

It would have been easier to have disposed of this appeal on its merits. It would have taken much less time and research. It is regrettable, too, that a decision on the merits of the cause must be delayed until it can be determined by another appellate

court. However, "under a constitutional government the acts of a court not within the powers prescribed by the organic law are usurpations, and when done by a court of last resort may become a grave menace." ·Vordick v. Vordick, 281 Mo. 279, 219 S.W. 591, 592.

For the reasons stated, the cause is transferred to the Kansas City Court of Appeals.

FINCH, P. J., and DONNELLY, J., concur.

EAGER, J., not sitting.