STATE of Missouri ex rel. Allan R. HOFFMAN and Sun Swept Apartment Company, Relators-Respondents,

v.

PUBLIC SERVICE COMMISSION of Missouri, Respondent-Appellant,

Laclede Gas Company, Intervenor-Appellant.

Nos. KCD 27739 and KCD 27784.

Missouri Court of Appeals, Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or Transfer Denied Dec. 8, 1975.

Leland B. Curtis, David L. Smith, Jefferson City, for respondent-appellant.

Richard L. Eckhart, St. Louis, for intervenor-appellant (Laclede).

Dominic Troiani, Mark T. Keaney, St. Louis, for relators-respondents (Hoffman & Sun Swept).

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

This is an appeal by the Public Service Commission from a judgment of the Circuit Court of Cole County reversing an order of the Commission denying to Allan R. Hoffman and the Sun Swept Apartment Company a variance under General Order # 51 of the Commission prohibiting payments for promotional purposes by public utilities. Laclede Gas Company, the affected utility, intervened as a party in the writ of review proceedings in the Circuit Court.

The parties align themselves in this court with the individual and corporate applicant in support of the Circuit Court order and the Commission and the Laclede Gas Company seeking a reversal.

The ultimate issue to be resolved is the jurisdiction of the Commission to entertain and decide the application for a variance from General Order # 51.

So far as relevant to the issues to be decided, the factual background of the dispute is as follows. Allan R. Hoffman and William Seltzer entered into a joint venture or partnership to construct an apartment project of 200 units referred to as the Flower Valley apartment project. Seltzer has assigned to Hoffman all his interest in the project and Sun Swept Apartment Company is a limited partnership added as a party before the Commission. Hoffman is the principal partner in Sun Swept Apartment Company and the interest of all the promoters of the project, the respondents here, can be encompassed by reference to *Hoffman.* Laclede Gas Company entered into an agreement with Hoffman to pay $30,000 in cash, furnish 50 gas lamps and pay 75 per cent of certain advertising costs. In return,

Hoffman agreed to build a 200-unit apartment complex by April, 1972 and to install gas appliances and not to install electrical outlets permitting the use of electrical kitchen appliances. This agreement was made in April of 1971. In May and June, FHA financing arrangements were made, and in early June, 1971, footings were poured for sixty units.

On June 28, the Public Service Commission entered General Order # 51 which prohibited any such promotional payments as were contemplated by the agreement between Hoffman and Laclede. There were no exceptions to the original order.

Certain litigation then ensued between some affected utilities and the Commission as to the validity and effect of General Order # 51. That litigation resulted in an order issued by the Circuit Court which stayed the enforcement of General Order # 51 where contracts had been substantially performed prior to July 8, 1971, the effective date of the original General Order # 51. Several amendatory proceedings as well as a number of requests for variance from compliance including Hoffman's were pending before the Commission during 1971. The Circuit Court litigation concerning General Order # 51 terminated in July, 1972, with a judgment of the Circuit Court validating General Order # 51 as lawful and not arbitrary. The Commission then took up and determined the issues relating to the applications for amendment of General Order # 51 and issued an Amended General Order # 51.

This amended order which the parties agree applies to this case incorporated an exception to the order where footings were poured prior to July 8, 1971, and contained an additional exception which gives rise to the instant dispute. That exception is as follows:

"Notwithstanding the provisions of paragraph (1) and (2), the Commission does hereby authorize until November 1, 1972, the filing of applications praying that certain promotional payments which

are otherwise prohibited under the provisions of this rule, be permitted, on a proper showing, in verified form, that Applicant would otherwise suffer a substantial legal detriment, and on further finding by the Commission that said detriment occurred pursuant to a legally binding and enforceable contract entered into prior to July 8, 1971."

Following the adoption of amended General Order No. 51 in September, 1972, the Commission heard on the merits in October, 1972, the request for a variance filed by Hoffman. That application filed in 1971 was in very general terms but it is clear from the record and the statements of counsel that the hearing before the Commission in October, 1972 was on the theory that Hoffman was entitled to a variance from the application of General Order No. 51 (to the contract with Laclede) under the proviso of the amended order set forth above.

In support of that theory Hoffman offered his own testimony concerning his arrangements for financing and his compliance with the Laclede contract as well as offering in evidence the basic contract documents. In view of the posture of this appeal, that evidence may be very briefly stated.

Hoffman asserted he relied upon the additional funds from the Laclede contract to add certain "frills" to the apartment project, further that these "frills" were a part of the plans and specifications and that the loan commitment for financing the project as well as the FHA agreement to insure required compliance with these specifications. Among the provisions of the commitment to insure was a provision permitting a decrease in the cost of the project of not more than 2 per cent of the total without prior consent. There is no evidence in the record that Hoffman, who was acting as his own general contractor, ever made any request of the lender or FHA to permit him to omit the "frills" he had contemplated financing with the promotional payments from Laclede. There was testimony from an employee of Laclede that Hoffman fully performed his agreement as to installation of gas appliances.

The Commission Report and Order was issued denying the variance. The Report and Order after recitation of findings of fact not in dispute reads as follows:

"Applicant contends that he used more costly appliances because he relied upon the Laclede promotional program. Yet, the Commission finds that by his own admission, Applicant could have changed to less expensive appliances. Indeed, all evidence indicates that Applicant did not in fact purchase its appliances until some considerable time after July 8, 1971. Numbered paragraph 6 of the Commitment of Insurance of Advances by FHA found in Applicant's exhibit number one clearly states how and under what conditions changes could be made in the project without violating the terms of the FHA Insurance commitment.

Applicant could have reduced its project costs by eliminating or changing the type of appliances or by making other changes in the project after July 8, 1971. Instead, Applicant proceeded at its own peril after making a business judgment as to what was the best plan for it.

*Conclusion*

The Missouri Public Service Commission has arrived at the following conclusions:

The Commission concludes that there was no legally binding and enforceable contract entered into prior to July 8, 1971, which could cause Applicant to suffer substantial legal detriment if not paid the promotional allowances in question.

The Commission is of the opinion and concludes, therefore, that Applicant, Allan R. Hoffman Developers and Sunswept Apartment Company has not met the requirements set forth in General Order No. 51 and General Order No. 51 as amended that would enable the Commission to grant variance and permit Laclede

Gas Company to make certain promotional payments. The Commission also concludes that Applicant has not met this burden as to advertising allowances and award credits."

Hoffman filed a motion for rehearing before the Commission and, when that was overruled, a petition for review in the Circuit Court of Cole County.

The judgment and decree of the Circuit Court abridged to essential part is as follows:

"The Public Service Commission, in its Order concluded that there was no legally binding and enforceable contract . . . , which could cause the Applicant to suffer substantial legal detriment . . ."

.    .    .    .    .

Whether or not the contract entered into between the Relators and the Laclede Gas Company, . . . is a legally binding contract is a question to be determined by the Courts, and the amount of any liability is to be determined by the Courts.

.    .    .    .    .

This Court concludes that the Public Service Commission is without jurisdiction to entertain and determine the Application filed by the Relators; . . .

.    .    .    .    .

. . . the Order of the Public Service Commission is reversed . . ."

Against this factual background, Hoffman makes a welter of assertions of error. As noted, the essential issue is one of the jurisdiction of the Commission which is apparent from the Circuit Court Order. Preliminary to a consideration of that issue, some disposition needs be made of some of the contentions briefed and argued.

Hoffman, the Commission and Laclede all argue that if the jurisdictional issue is resolved in favor of the Commission, that this court undertake a determination of the issue of whether or not the Commission's

order is supported by substantial evidence, an issue of the Circuit Court did not decide in its review. The argument is that since that issue, once decided by the Circuit Court, is reviewable here, that this court should, in effect, short circuit the matter and determine the issue on this appeal.

■ The simple and direct answer to this argument is the language of the statute. Section 386.510 in relevant part is:

"No court in this state, except the circuit courts to the extent herein specified and the supreme court or the court of appeals *on appeal,* shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission . . ." RSMo 1959. (Emphasis added.)

The jurisdiction to review the circuit court is appellate only and such jurisdiction does not arise until the circuit court has made its finding. No determination of that issue will be made prior to the appropriate finding by the circuit court.

■ The Commission also contends that the circuit court erred in concluding that the Commission was without jurisdiction because Hoffman did not raise the issue of the Commission's jurisdiction in the motion for rehearing filed before the Commission. The circuit court is an appellate court when it reviews Public Service Commission rulings. Section 386.510 RSMo 1959; *Lusk v. Public Service Commission,* 277 Mo. 264, 210 S.W. 72 (Banc 1919), reversed on other grounds, 254 U.S. 535, 41 S.Ct. 192, 65 L.Ed. 389 (1921); *State v. Public Service Commission of Missouri,* 339 Mo. 469, 97 S.W.2d 116 (Banc 1936). It is a settled rule of appellate practice that at any time the parties can challenge jurisdiction (*Bailey v. American Life and Accident Ins. Co.,* 96 S.W.2d 903 (Mo.App.1936)) or the appellate court *sua sponte* can raise the issue of jurisdiction (*Kelch v. Kelch,* 450 S.W.2d 202 (Mo.1970)). If there is no jurisdiction in the Public Service Commission to grant a variance under Section 10(3), the circuit court properly raised the issue and remanded the case.

Thus shorn of extraneous issues, the fundamental question emerges. Did the Commission, in refusing Hoffman's request for a variance, exceed its jurisdiction?

The Commission first argues that the circuit court misconstrued the order of the Commission in the portion of the circuit court judgment reading:

> "Whether or not the contract entered into between the Relators and the Laclede Gas Company, . . . , is a legally binding contract is a question to be determined by the Courts, and the amount of any liability is to be determined by the Courts."

This language of the circuit court was likely enough invited by the equally ambiguous language of the order of the Commission in its conclusion which reads:

> "The Commission concludes that there was no legally binding and enforceable contract entered into prior to July 8, 1971, which could cause Applicant to suffer substantial legal detriment if not paid the promotional allowances in question."

That last quoted language may very well be read as a conclusion by the Commission that the Laclede promotional contract was not binding and enforceable. In any event as the Commission points out in its brief, from the evidence and the issues considered and the entire order, it is apparent that the Commission was not declaring the Laclede contract void or unenforceable. Applying the same analysis to the circuit court judgment, however, it appears that the circuit court's basis for decision is not aptly expressed in terms of finding that the Commission declared a contract void but rather that the Commission construed a contract to find no detriment. Put another way, the circuit court was holding that the determination of whether the contracts in issue created a "legal detriment" is an issue of law which the Commission is without authority to resolve.

■ The rule does, in fact, exist that the Commission "has no power to declare or enforce any principle of law or equity."

*Lightfoot v. City of Springfield,* 361 Mo. 659, 669, 286 S.W.2d 348, 352 (1951).

Hoffman's brief pursues this issue, citing cases that hold that the Commission cannot assume judicial powers. However, these are cases where a cause of action on a contract existed *independent* of any Commission rule. If the circuit court was saying the builder possibly has a cause of action on the contract for promotional payments independent of Section 10(3), it is now clear that such a contention is wrong. This issue was litigated and resolved against the party claiming a right to promotional payments prohibited by General Order 51 as amended. *McBride & Son Builders v. Union Elec. Co.,* 526 S.W.2d 310 (Mo.1975).

In its order denying the Commission jurisdiction over claims under Section 10(3), of Amended General Order 51, the circuit court did not invalidate the order. It held only that the Commission had "misconstrued the legal effect" of the amended order. Thus, the reasoning of the circuit court again appears to be not that the Commission was construing contract rights independent of Section 10(3), but that the Commission was construing contracts when interpreting Section 10(3).

The root of this controversy then is that the Commission used the language and concepts of contract law to create a category for variance in writing Amended General Order 51. Apparently the circuit court reacted to the Commission's use of contract terms and decided that in spite of the fact one's claim to a variance arises *out of* 10(3) and not *independent of* 10(3), the Commission is without jurisdiction because it is attempting to litigate law issues. Had the Commission, for example, created an additional variance for builders who poured footings before January 1, 1972, presumably there would be no question of Commission jurisdiction. Whether footings were poured is not a law issue.

Thus the critical question in this case can be restated as follows: Did the Commission,

by creating a category for variances using the language and concepts of contract law, assume judicial powers in excess of its jurisdiction? (Laclede and the Commission cast this issue generally, arguing that the Commission was merely interpreting and applying its own rule.)

*McBride*, supra, implies that the Commission has jurisdiction to determine variances under Amended General Order 51. There, the court recited that the Commission made certain contentions with which the court agreed. Among these as stated in the opinion was the following:

"Third: In *State ex rel. Cirese v. Ridge* [345 Mo. 1096], 138 S.W.2d 1012, 1015 (Mo. banc 1940), we said: '[W]e have consistently adhered to the rule that matters within the jurisdiction of the commission must first be determined by it, in every instance, before the courts will adjudge any phase of the controversy.' Plaintiff made no application to the Commission for a variance after General Order No. 51 as amended was adopted September 15, 1972 but sought payments authorized by it." (l.c. 314)

This holding in *McBride* is in direct conflict with that portion of the circuit court order which asserts that the courts must first determine the rights of Hoffman and then the utility must seek relief from the General Order # 51 before the Commission.

No case precisely in point has been found, but a federal case is persuasive on the issue. In *N. L. R. B. v. Marcus Trucking Co.*, 286 F.2d 583 (C.A.2d, 1961), the N.L.R.B. determined that an employer had entered into a certain labor agreement and that he was bound by that agreement rather than by one executed at a later date. On appeal, the court held that the N.L.R.B. finding that a first agreement was in fact made was a finding of fact subject to the substantial evidence rule rather than a question of law. To reach the decision that an agreement existed, the N.L.R.B. agreed with its hearing examiner that certain conduct constituted ratification of the first

agreement and that the authority of the employer's agent had not been revoked. The N.L.R.B. application of "undisputed legal terms" to "raw facts" was held to be subject to the review standard for questions of fact—the substantial evidence rule. Similarly, "whether an agent has acted within the scope of his authority, actual, inherent or apparent, is a 'question of fact' within § 10(e) of the Labor Relations Act . . ." *N. L. R. B. v. Local 815, International Bro. of Teamsters, Etc.*, 290 F.2d 99 (C.A.2d, 1961).

■■ There is no question but that the Public Service Commission can make orders based on findings of fact, subject on review to the substantial evidence rule. *State v. Public Service Commission*, 308 S.W.2d 704 (Mo.1957); *State v. Burton*, 334 S.W.2d 75 (Mo.1960). The Commission also can make and interpret rules to carry out its statutory authority. *State v. Public Service Commission*, 232 Mo.App. 605, 110 S.W.2d 364 (1937); *State v. Burton*, supra.

■ In the instant case, the Commission made a rule, General Order 51, amended, pursuant to Section 393.140, Subsection 11, (RSMo 1959), which provides in part for the Commission to regulate promotional payments practices. This section also provides that the Commission can establish, modify and amend rules and regulations necessary for carrying into effect the provisions of the subdivision.

To determine if this builder qualified for a variance under Section 10(3), the Commission necessarily had to make findings as to whether the builder otherwise suffered a legal detriment pursuant to a legally binding contract. This was not a finding as to contractual liability in the sense a court decides contract liabilities. Rather, it was a finding as to whether the builder came under the variance created by the rule of the Commission.

It was entirely appropriate for the Commission to formulate a rule which included legal terms and to apply the "undisputed

legal terms" to "raw facts" to make the necessary administrative finding of whether the builder qualified for a 10(3) variance. On review, the circuit court must apply the substantial evidence test to the Commission's findings.

No other result is possible on these facts in view of *McBride,* supra. Clearly, it holds no right of independent action in the courts is available to a contractor and, equally clearly, it holds that the proper forum is the Commission. The Supreme Court in *McBride,* was considering Amended General Order # 51 and the rights of a contractor thereunder. The case can only be considered as holding that the Commission has jurisdiction.

The cause is reversed and remanded to the circuit court for a determination of whether or not the Commission's order is supported by substantial evidence.

All concur.