**STATE of Missouri ex rel. MISSOURI OFFICE OF THE PUBLIC COUNSEL, Appellant,**

v.

**MISSOURI PUBLIC SERVICE COMMISSION, Respondent.**

No. WD 42135.

Missouri Court of Appeals, Western District.

Jan. 16, 1990.

John B. Coffman, Mark D. Wheatley, and Lewis R. Mills, Jr., Office of the Public Counsel, Jefferson City, for appellant.

William K. Haas, Asst. Gen. Counsel, Missouri Public Service Com'n, Jefferson City, for respondent.

Before MANFORD, P.J., and SHANGLER and CLARK, JJ.

CLARK, Judge.

This appeal presents the question of whether the Public Service Commission has unreasonably and unlawfully discriminated among customers of the St. Louis Water Company and the Missouri Water Company in its report and order approving rule changes in the companies' water main extension tariffs. Also in issue is whether the order creates an unreasonable risk of revenue deficiencies to the companies. The appellant-relator sought review of the commission order in the circuit court of Cole County which affirmed the commission order and this appeal followed. We conclude that the commission order is lawful and reasonable and we therefore affirm.

The amended tariffs at issue in the case concern contributions in aid of construction (CIAC) made by applicants for water main extensions needed to serve new land developments. Utilities have traditionally been

unwilling to make the capital expenditures necessary to extend facilities to new areas unless the prospective customers for added services aid in funding the capital costs. The validity and lawfulness of the CIAC concept are not at issue in this case.

Under § 118(b) of the Internal Revenue Code of 1954, CIAC payments received by regulated public utility companies were treated for tax purposes as contributions to the capital of the utility and therefore the payments were not income taxed to the utility. The 1986 Tax Reform Act changed that code section and amended § 118(b) providing that CIAC payments be treated as income to the utility in the year received.[1]

The result of the change in the tax law was to increase the initial cost to the utilities for water main extensions by the amount of income taxes owed on the CIAC payments. The utilities sought relief by way of tariff amendments. As filed, the amendments required the applicants for water main extensions to pay the income taxes in addition to the CIAC payments thereby making the latter amounts available in full for payment of the main extension costs.[2]

The proposed amendments to the water main extension tariffs were opposed by certain developers and other interested parties and they were permitted to intervene in the case. Intervenors objected to the addition of the tax payments on the ground that the income taxes payable on CIAC contributions were not items of ultimate expense to the utilities in that depreciation expense allowable to the utilities on future tax returns by reason of the capital investments in the main extensions would allow the utilities to recoup the tax initially paid.

Intervenors argued that future tax reductions to the utility attributable to depreciation expense should be taken into account in computing the required amounts of CIAC payments.

Under the evidence before the commission, it was undisputed that the utilities would recover some amount of the initial income tax payments by reason of the addition of depreciable capital assets associated with the CIAC payments. Whether the amounts of recovery would be more or less than the income tax paid could not be ascertained with certainty in advance. The value of future expense deductions would depend on the amount of the utilities' liability for income taxes in subsequent years and also the level of future tax rates. Moreover, it was undisputed that the benefit of future expense deductions offsetting future taxes over the useful life of the water mains would have a present cash value of substantially less than the sum of the projected tax savings from the expense deductions.

A number of options were presented to the commission to address the problem, all subject to the underlying agreement that CIAC payments should include sums to defray the income taxes attributable to the payments and that CIAC contributors were entitled to the offsetting benefits of future tax savings to the utilities from depreciating the mains associated with the CIAC payments. The option selected by the commission is phrased as follows:

> Applicant for service or developer shall pay the taxes owed on contributions, including a multiplier to account for taxes on taxes, less the estimated present value of future tax savings which may be

---

1. The § 118(b) revision of the tax code is unrelated to traditional distinctions between payments received as income and contributions to capital accounts. The sole purpose for CIAC payments is to aid in the addition of depreciable capital assets, here, water main extensions. For purposes of future tax accounting, the investment in the mains is depreciated over the life of the mains and is an expense accountable in computing any income tax owed by the utility. Thus, the sole accomplishment attributable to the amendment of § 118(b) is to permit the federal government to obtain payment currently

of income taxes, the benefit of which will be offset in future years, dollar for dollar by depreciation expense assuming level tax rates. The corresponding problems created are graphically demonstrated by this case.

2. The added payments for taxes also constituted income subject to tax, thereby increasing the amounts needed for tax payment. A formula addresses this problem and is not the subject of any dispute in the case.

realized by the utility as a result of the contributions.

Appellant first contends the decision by the commission is unlawful and unreasonable because it discriminates between ratepayers. The basis for this argument lies in the fact that if the payment by new service applicants to the CIAC account includes less than the full amount of income tax due because of the CIAC payment, a necessary consequence of using the present value concept, then other ratepayers must make up the difference. This means that other ratepayers are subsidizing in part the service to new customers until deductions for future depreciation recover the expense.

■ On appeal from a decision by the circuit court in a case decided by the Public Service Commission, the appellate court reviews the decision of the commission, not the judgment of the circuit court. *State ex rel. City of St. Joseph v. Public Serv. Comm'n,* 713 S.W.2d 593, 595 (Mo.App. 1986). The appellate court may not substitute its judgment on the evidence for that of the commission. Rather, the question is whether or not the commission, upon consideration of all the evidence before it, could have reasonably made its findings and reached its announced result. *State ex rel. Union Electric Co. v. Public Serv. Comm'n,* 765 S.W.2d 618, 621 (Mo.App. 1988). There is no presumption in favor of the commission's resolution of legal issues which are decided by the appellate court anew. The decision of the commission on factual issues, however, is presumed to be correct until the contrary is shown and the appellate court is obliged to sustain the commission's order if it is supported by substantial evidence on the record as a whole. *Love 1979 Partners v. Public Serv. Comm'n,* 715 S.W.2d 482, 486 (Mo. banc 1986). The commission's orders are presumed correct and the challenger has a heavy burden to prove otherwise. A reversal is warranted if the commission action was arbitrary, capricious or without reasonable basis. *State ex rel. Arkansas Power & Light Co. v. Missouri Public Serv. Comm'n,* 736 S.W.2d 457, 462 (Mo. App.1987).

■ Reviewed under the above standards, we do not find the commission's order to be either unlawful or unreasonable. All parties to the case agreed that some risks were involved in any plan designed to cope with the problems created by the 1986 Tax Reform Act. The options presented to the commission merely allocated the risks in different ways. The choice which was made is arguably one dealing most reasonably with the problem. It is true, as appellant contends, that water company ratepayers will be obligated to contribute in the year of a CIAC payment an amount necessary to complete payment of the income tax due on the CIAC contribution. That amount, however, will not be the difference between the future tax benefits reduced to present value as paid by the developers and the total tax, but the return otherwise expected on the amount of working capital used to pay the difference. That contribution will, of course, flow back to the ratepayers as the mains are depreciated for tax purposes. Whether the ultimate result will be a balancing of interests or one favoring the developers or the ratepayers cannot be known or predicted for purposes of the tariff.

The opposing concept favored by appellant called for the developers and new customers to pay the full tax in the year of the CIAC payment and then to receive credits each year as the tax was recovered through depreciation expense. Although the plan offered the advantage of eliminating any estimates of what the tax recoveries would be, the commission rejected that option as excessively cumbersome and expensive. Assuming a depreciable life for the mains of thirty years, the utilities would, under appellant's plan, be required to maintain records for all individuals and developers making CIAC contributions and process annual refunds throughout the thirty year period. In the case of Missouri Cities Water Company, at least seventy-five contribution contracts are entered into each year. The commission correctly concluded that the burden and expense of such extensive record keeping was unjustified and impractical. That decision was sound.

Appellant cites several cases which it says tend to support its argument that the revenue shortfall resulting from the commission's order in this case results in unreasonable discrimination. We have considered those cases and find them to be distinguishable on the facts.

The law as to the utility rate discrimination is found in § 393.130.3, RSMo 1986, which provides:

> No gas corporation, electrical corporation, water corporation or sewer corporation shall make or grant any undue or unreasonable preference or advantage to any person, corporation or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

In *State ex rel. Marco Sales, Inc. v. Public Serv. Comm'n*, 685 S.W.2d 216, 221 (Mo.App.1984), the court noted that a discrimination as to rates is not unlawful under the statute where it is based upon a reasonable classification corresponding to actual differences in the situation of the consumers or the furnishing of the service. Whether a discrimination is unlawful and unjust or the circumstances are essentially dissimilar is usually a question of fact. *Id.*

Section 393.130.3, RSMo 1986, and the cases which have discussed the statute do not lay down the proposition that all discrimination is prohibited. If discrimination is reasonable because of the particular circumstances in the case, rates are not struck down merely because of the dissimilarity. In *Smith v. Public Serv. Comm'n*, 351 S.W.2d 768 (Mo.1961), for example, discriminatory rates for electric service between commercial users and residential customers was found acceptable because the basis for the classifications related to power usage was reasonable.

In the present case, the fact that current ratepayers will subsidize temporarily the extension of service to new customers is the consequence of a choice by the commission among available options to deal with a new tax burden imposed by the Tax Re-form Act. None of the choices for revising the schedule of CIAC payments was totally free of risk to the developers, the utilities and the ratepayers. The commission was obligated to select the option which appeared to it to be the most reasonable. In the circumstances, the risk assignment, although resulting in some rate discrimination, was merely a product necessarily flowing from allocation of near term and long term tax expenses and tax benefits. We conclude that such short term burden as is imposed on the current ratepayers, presumably balanced as it will be by long term offsets, does not grant any undue or unreasonable preference or advantage to the developers and those similarly situated.

Appellant's second point contends that the commission order approving the modified tariff for CIAC payments was unlawful because it was not supported by adequate findings of fact. The point actually takes issue with the factual basis underlying the commission's conclusion that the tariff option advocated by appellant was financially impractical.

Findings in respect to this subject by the commission were (1) that the cost of administering annual refunds for a period of fifteen to thirty years would be substantial and that many of those entitled to the refunds would not be located, and (2) that the administrative costs for the refund program would be disproportionate to the expense, and (3) that the initial cost to new consumers under the plan advanced by appellant would create an unreasonable burden on the new customers.

In testing the sufficiency of findings of fact made by the commission, it is required that the findings be sufficiently definite and certain under the circumstances of the case to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence. *State ex rel. A.P. Green Refractories, Inc. v. Public Serv. Comm'n*, 752 S.W.2d 835, 838 (Mo.App.1988).

As discussed earlier in this opinion, the problems with the plan for refunds advocated by appellant lay in the numbers of

prospective recipients and the time period over which the depreciation expenses would recapture the tax. Assuming a useful water main life of thirty years, the appellant's plan would require the water companies to maintain records throughout the entire period tracking the identities of all customers entitled to annual refunds as well as apportioning year by year among those persons the amounts computed on each year's tax return as a refund attributable to the income tax originally advanced in the CIAC payments. Various estimates of the costs for such programs appear in the testimony. There was no disagreement that the costs would be substantial and that the administrative detail would be burdensome. Conversely, there was evidence tending to support the conclusion that the present value formula used as a component of the commission order was a reasonable, practical and cost effective solution to the problem.

Appellant's argument seems to be based on a contention that the commission order would have been adequate only if based on evidence setting the costs of the refund plan with mathematical precision and then, only if the order itself excluded any statements of conclusions. We disagree. The burdensome and costly character of appellant's plan was amply shown by the testimony and the conclusion that the plan was impractical follows upon that evidence. There was no question from the commission's findings as to the basis for its decision in this aspect of the case. The findings expressed in the order were not deficient or incomplete. Appellant's second point is denied.

In a final point, appellant contends the commission's order is unlawful because it violates the "matching principle" in that present expenses, that is the cost of water main extensions and the related income taxes, are not matched against revenue, the CIAC payments. In consequence, appellant argues that the shortfall must be made up by increased costs to existing ratepayers.

As we have pointed out earlier in this opinion, the basis for calculating the present value formula used in the commission order assumes on the most reliable data available that over the life of the new water mains, the initial shortfall will be balanced by future tax savings to the utilities through depreciation expenses. Thus, the matching principle is observed in the long term.

The problem presented to the commission was not whether the burden of the tax should fall on the new customers or the existing ratepayers, but how the long term effects of the tax accounting should be allocated. In *State ex rel. City of West Plains v. Public Serv. Comm'n*, 310 S.W.2d 925, 933 (Mo. banc 1958), a case posing the similar question of how municipal occupation taxes should be passed on to customers of telephone service, the court noted that the duty of the commission is to allocate and treat costs, including taxes, in the way in which, in the commission's judgment, the most just and sound result is reached. It is not our function to substitute our judgment for that of the commission but to determine whether the subject order is lawful and reasonable. *Id.*

The commission determined that the method for treatment of CIAC tax consequences most justly and soundly addressing the problem was not by the extended term refund plan but by reducing the initial payment by CIAC contributors through the present value calculation. Appellant has not demonstrated that this choice was either unlawful or unreasonable under the facts.

The judgment is affirmed.

All concur.