

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE MATTER OF THE JOINT )
APPLICATION OF MISSOURI-AMERICAN )
WATER COMPANY AND DCM LAND, LLC, )
FOR A VARIANCE FROM THE COMPANY'S )
TARIFF PROVISIONS REGARDING THE )
EXTENSION OF COMPANY MAINS, )
           )
           Respondent, )
           )
v. )      WD85352
           )
OFFICE OF PUBLIC COUNSEL, )      Opinion filed:  December 27, 2022
           )
           Appellant. )

## APPEAL FROM THE PUBLIC SERVICE COMMISSION

Division One:  W. Douglas Thomson, Presiding Judge,
Alok Ahuja, Judge and Edward R. Ardini, Jr., Judge

This appeal concerns the Public Service Commission's authority to grant variances from a utility's tariff. Missouri-American Water Company ("Water Company") and DCM Land, LLC ("DCM Land") jointly applied to the Public Service Commission (the "Commission") for variances from certain provisions of Water Company's tariff. The Office of the Public Counsel ("Public Counsel") opposed the variance requests. The Commission granted the variances and Public Counsel appeals, asserting (1) the Commission had no legal authority to grant the variances; (2) even if the Commission had authority, "good cause" did not exist to grant the variances; and (3) the Commission's order granting the variances was unlawful and unjust because it allowed

Water Company to unduly discriminate in favor of DCM Land. For the reasons stated below, we affirm the order of the Commission granting the variances.

## Background

Water Company provides water service to Missouri customers, and is a "water corporation" and "public utility" as those terms are defined in § 386.020, RSMo.[1] Water Company provides its services subject to a tariff approved by the Commission. A tariff is "a document published by a public utility, and approved by the commission, that sets forth the services offered by that utility and the rates, terms and conditions for those services."[2] Water Company's tariff contains provisions relating to the funding of water main extensions.

DCM Land develops real estate projects, and is developing the Cottleville Trails subdivision (the "Development") in St. Charles County, Missouri. The Development will be built in two phases. 355 single family homes and 175 apartment units will be built in Phase 1, and 217 additional attached, single family homes will be built in Phase 2. The Development is expected to take five years to complete.

The Development is located in the service areas of both Water Company and Public Water Supply District No. 2 of St. Charles County ("Water District No. 2"). However, pursuant to a territorial agreement previously entered into by Water Company and Water District No. 2, the Development is wholly within Water Company's exclusive territory.

Water Company and DCM Land filed a joint application with the Commission, seeking a variance from three rules in Water Company's tariff relating to the funding of water main

---

[1] All statutory references are to RSMo 2016 as currently supplemented unless otherwise provided.

[2] *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 210 S.W.3d 330, 334 (Mo. App. W.D. 2006); *see also* 20 CSR 4240-3.010(28).

extensions: Rule 23A.2, Rule 23A.3, and Rule 23C.6, specifically seeking variances from the tariff language emphasized below.

> [Rule 23A.]2. The Company will be responsible for all main extensions where the cost of the extension does not exceed four (4) times the estimated average annual revenue from the new Applicant(s) whose service pipe(s) will immediately be connected directly to the extension and from whom the Company has received application(s) for service upon forms provided by the Company for this purpose. New Applicants shall be those who commit to purchase water service for at least one year, and guarantee to the Company that they will take water service at their premises within **one hundred twenty (120) days** after the date the Company accepts the main and determines it ready for Customer Service. . . .

Relating to this tariff rule, Water Company and DCM Land requested a variance from the definition of "New Applicants," to increase the 120-day deadline to five years. In other words, the variance would allow the "estimated average annual revenue from new Applicant(s)" to include those who guaranteed they would take water service within five years after the main was ready, as opposed to 120 days, as provided by the tariff.

Rule 23A.3 and Rule 23C.6 describe the funding scheme for water main extensions, and specifically which portion of the cost will be borne by Water Company:

> [Rule 23A].3. If the estimated cost of the proposed extension required in order to furnish general water service exceeds four (4) times the Company's estimate of average annual revenue from the new Applicant, the Applicant and Company shall fund the remaining cost (i.e., total cost less four (4) times the estimated average annual revenue from any new Applicant(s)) of the proposed water main extension **at a ratio of 95:5 (i.e., 95% Applicant funded and 5% Company funded) for St. Louis Metro District,** and 86:14 (i.e., 86% Applicant funded and 14% Company funded) for all other districts.
>
> . . .
>
> [Rule 23C].6. Upon completion of the Main Extension, and prior to acceptance of the extension by the Company, the Applicant will provide to the Company a final statement of Applicant's costs to construct such extension. The final statement of costs will be added to the actual costs for Company to provide services as per the Developer Lay Proposal. Upon acceptance of the main extension, the Company will then issue payment to the Applicant of **five percent (5%) (for St. Louis Metro District contracts) and fourteen percent (14%) (for all other district contracts)**

3

of the total, final costs that exceed four (4) times the estimated average annual revenue pursuant to Provision A.2 and 3., above. . . .

The Development is located in the "St. Louis Metro District" for purposes of Water Company's tariff. DCM Land and Water Company requested a variance that would make them subject to the 86:14 funding ratio applicable to all districts other than St. Louis, as opposed to the 95:5 funding ratio applicable under the tariff.

Effectively, the requested variances from Rule 23A.2, Rule 23A.3, and Rule 23C.6 would increase Water Company's responsibility—and decrease DCM Land's responsibility—for the cost of the water main extension.

Water Company and DCM Land filed their joint application for variances pursuant to 20 CSR 4240-2.060(4), which requires that an application for a tariff variance contain certain information, including "[t]he reasons for the proposed variance or waiver and a complete justification setting out the good cause for granting the variance or waiver[.]" 20 CSR 4240-2.060(4)(B). Water Company and DCM Land asserted that good cause existed for the variances because "the build-out of a development of such magnitude may not reasonably be expected to occur in 120 days, but is reasonably anticipated to occur over a 5-year period." DCM Land also asserted that good cause existed in that "but for the territorial agreement filed between [Water District No. 2] and [Water Company], . . . for which DCM Land and its predecessors in interest received no notice, Cottleville Trails could be served by [Water District No. 2] and DCM Land would not be required to construct the water system in the development at its cost and contribute it to [Water Company] without a reasonable opportunity to recover the cost thereof . . . ." Without the requested relief, DCM Land asserted that it would be required "to pay significantly higher development costs, and/or the home buyers in the Cottleville Trails subdivision to pay higher costs for their homes, than would result if water service were provided" by Water District No. 2.

4

The Staff of the Commission ("Staff") filed a Recommendation urging the Commission to deny the application, asserting the Commission lacked authority to grant tariff variances and the funding-ratio variance would be unduly discriminatory.[3] Water Company and DCM Land filed responses, and the parties filed a joint stipulation of facts. Among other facts, the parties stipulated that DCM Land was "installing a 12 [inch] main in place of an existing 4 [inch] main in Old Town Cottleville," and "[t]hat replacement would improve fire protection in the area and provide water main access to several additional properties nearby." After additional briefing, the Commission granted Water Company and DCM Land's application. Thereafter, Public Counsel[4] filed an application for rehearing, which was granted by the Commission. After additional briefing, the Commission issued a revised order ("Revised Order") again granting the application for variances.

In its Revised Order, the Commission concluded that it had statutory authority to grant a tariff variance and that good cause existed to grant Water Company and DCM Land's variance requests. The Commission found good cause existed "[b]ecause of the added fire protection and access gained to nearby areas, the number of new customers taking service and the revenue expected to be produced, and the specific facts surrounding the location of this development within the service territory of St. Louis Metro District of [Water Company] instead of another tariffed district or [Water District No. 2]." The Commission determined that, for these same reasons, the variances were "reasonable and not unduly discriminatory."

Public Counsel appeals.

---

[3] Staff did not object to the variance from the 120-day time limit for taking service.

[4] "The Office of Public Counsel is a state agency that represents consumers in all utility proceedings before the Commission and in all appeals of Commission orders." *In re Request for an Increase in Sewer Operating Revenues of Emerald Pointe Util. Co.*, 438 S.W.3d 482, 485 (Mo. App. W.D. 2014).

5

**Standard of Review**

Appellate review of a Commission order is two-pronged: "first, the reviewing court must determine whether the [Commission's] order is lawful; and second, the court must determine whether the order is reasonable." *In re Amendment of Comm'n Rule Regarding Applications for Certificates of Convenience & Necessity*, 618 S.W.3d 520, 523 (Mo. banc 2021); *see also* § 386.510. "All questions of law, including whether statutory authority exists to support an order of the [Commission], are reviewed *de novo*." *In re Amendment of Comm'n Rule*, 618 S.W.3d at 523. An order of the Commission is reasonable when "the order is supported by substantial, competent evidence on the whole record; the decision is not arbitrary or capricious; and where the [Commission] has not abused its discretion." *Id.* (internal marks omitted).

**Point I – Authority to Grant Tariff Variances**

In its first point, Public Counsel asserts the Commission erred in granting the requested variances because the Commission "does not have the legal authority" to grant a variance from a utility's tariff, arguing no statutory authority exists that allows the Commission to grant a tariff variance, and, to the extent the Commission does have authority, it must come from the tariff itself. Regarding the latter argument, Public Counsel asserts the Commission cannot grant a variance unless the tariff specifically authorizes the Commission to do so, and Water Company's tariff did not provide the Commission with authority to approve these variances. We disagree with Public Counsel's contentions, and find the Commission has statutory authority to grant a variance from a tariff.

The Commission is a "creature of statute and can function only in accordance with its enabling statutes." *In re Amendment of Comm'n Rule*, 618 S.W.3d at 524. Thus, the Commission has the ability to grant a tariff variance only if it has been given the power to do so by the

legislature. *See id.* (The Commission's "powers are limited to those conferred by statutes, either expressly or by clear implication as necessary to carry out the powers specifically granted."). We find that the legislature has empowered the Commission to grant tariff variances through section 393.140(11).

Subdivision 11 of section 393.140 provides the Commission with authority to approve and prescribe tariff changes, and further authorizes the Commission to promulgate regulations allowing for the review and modification of tariffs[5]:

> Unless the commission otherwise orders, no change shall be made in any rate or charge, or in any form of contract or agreement, or any rule or regulation relating to any rate, charge or service, or in any general privilege or facility, which shall have been filed and published by a . . . water corporation . . . in compliance with an order or decision of the commission, except after thirty days' notice to the commission and publication for thirty days as required by order of the commission, which shall plainly state the changes proposed to be made in the schedule then in force and the time when the change will go into effect. The commission for good cause shown may allow changes without requiring the thirty days' notice under such conditions as it may prescribe. No corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time; nor shall any corporation refund or remit in any manner or by any device any portion of the rates or charges so specified, nor to extend to any person or corporation any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons and corporations under like circumstances. The commission shall have power to prescribe the form of every such schedule, and from time to time prescribe by order such changes in the form thereof as may be deemed wise. The commission shall also have power to establish such rules and regulations, to carry into effect the provisions of this subdivision, as it may deem necessary, and to modify and amend such rules or regulations from time to time.

The plain language of section 393.140(11) authorizes the Commission to approve "changes" to a rate or charge, or to any rule or regulation relating to a rate, charge, or service in a filed and

---

[5] A tariff is a document that lists a utility's rates, terms, and conditions of service, and "[i]n the context of cases before the [Commission], the terms 'tariff' and 'rate schedule' are synonymous." *In re Kan. City Power & Light Co.'s Request for Auth. to Implement a Gen. Rate Increase for Elec. Serv.*, 509 S.W.3d 757, 782-83 (Mo. App. W.D. 2016).

7

published tariff. The Commission's grant of a tariff variance to Water Company and DCM Land is a change to Water Company's filed and published tariff. Though a variance effects a tariff change with limited—instead of general—applicability, that alone does not remove "variances" from the scope of "changes" to tariffs the Commission is authorized to approve. Public Counsel's assertion to the contrary, which argues that subdivision 11 only authorizes the Commission to approve modifications to a tariff, but not variances, attempts to impose a narrow definition on the word "change" that has not been expressed by the General Assembly. Subdivision 11 does not limit the form of tariff changes the Commission may approve, and we decline to read into the subdivision a distinction between a tariff "modification" and a tariff "variance" that would limit the Commission's authority to approve a tariff variance. *See In re Amendment of Comm'n Rule*, 618 S.W.3d at 525 (we are to infer that the legislature intended to vest "a power . . . in the [Commission] rather than a limitation"). Instead, the Commission's authority to approve a change to a tariff pursuant to the authority expressed in section 393.140(11) is limited only as described by the statute.

Public Counsel has not challenged the approval of the variances on the grounds that procedural requirements for approving changes to a tariff set forth in subdivision 11 were not satisfied. *See* § 393.140(11) ("Unless the commission otherwise orders, no change shall be made . . . except after thirty days' notice to the commission and publication for thirty days as required by order of the commission," which shall state the proposed changes and time when the changes will go into effect).[6] As this issue was not raised by Public Counsel, we do not address it. *See Hammond*

---

[6] The record reflects that Water Company and DCM Land filed their joint application for variances on May 6, 2021, and on May 11, 2021, the Commission issued its Order Directing Notice, Setting Time for Intervention and Responses, and Directing a Staff Recommendation. The Commission directed that the Order be sent to various non-parties and be made available to the media and members of the General Assembly. Attached to the Order was Water Company and DCM Land's joint application. The Commission ultimately granted the joint application in its Revised Order issued on March 16, 2022.

*v. Toole*, 644 S.W.3d 289, 293 n.2 (Mo. App. W.D. 2022) (declining to address issue that was not raised in the appeal).[7]

Public counsel also has not argued that the approved variances violated section 393.140(11) because they permitted Water Company to collect rates or charges not "regularly and uniformly extended to all persons and corporations under like circumstances." Public Counsel does make a related argument, however, in its third point relied on where it argues that the approved variances were unduly discriminatory in violation of section 393.130.3. We address Public Counsel's argument that the approved variances were unduly discriminatory in discussing its third point on appeal, *infra*.

Notwithstanding the plain language of section 393.140(11) which authorizes the Commission to approve changes to tariffs, Public Counsel asserts that the "Missouri Supreme Court, dating back to at least 1926, has held that a regulated utility's tariff that has been approved by the Commission 'acquires the force and effect of law,'" and "'[i]f such a schedule is to be accorded the force and effect of law, it is binding not only upon the utility and the public, but upon the . . . Commission as well.'" (Quoting *State ex rel. St. Louis Cty. Gas Co. v. Pub. Serv. Comm'n*, 286 S.W. 84, 86 (Mo. 1926)). We acknowledge that "[a] tariff has the same force and effect as a statute, and it becomes state law." *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 210 S.W.3d 330, 337 (Mo. App. W.D. 2006). However, laws can be modified or changed as permitted by statute. To suggest otherwise would be to render section 393.140(11) meaningless. Moreover, "[a] properly promulgated rule also becomes the law of Missouri," *id.*, and we have held that the Commission may properly grant variances from its rules and regulations, *see State ex rel. Pub.*

---

[7] We also note that ordinarily we expect modifications to be published in a rate sheet, and here the Commission only directed in its Revised Order that "[a]ny Main Extension Contract . . . entered into by [Water Company] and DCM Land for Cottleville Trails shall reflect the variances granted." However, this issue was not raised either, and thus we do not address it.

*Counsel v. Pub. Serv. Comm'n*, 301 S.W.3d 556, 566 (Mo. App. W.D. 2009); *Deaconess Manor Ass'n v. Pub. Serv. Comm'n*, 994 S.W.2d 602, 610-11 (Mo. App. W.D. 1999); *State ex rel. Hoffman v. Pub. Serv. Comm'n*, 530 S.W.2d 434, 439-40 (Mo. App. Kan. City 1975). If the Commission has authority to grant a variance from a binding regulation when appropriate, it follows that the Commission similarly has authority to grant a variance from a binding tariff when circumstances warrant in light of its statutory authority to do so.

Although Public Counsel maintains that the Commission does not have statutory authority to grant a tariff variance, Public Counsel inconsistently concedes that the Commission is authorized to grant a tariff variance if the tariff specifically authorizes the Commission to do so, and that Water Company's tariff provided no such authorization. In support of its argument, Public Counsel relies on *State ex rel. Kennedy v. Public Service Commission*, 42 S.W.2d 349 (Mo. 1931). However, we are not persuaded by Public Counsel's interpretation of the *Kennedy* decision.

In *Kennedy*, property owners filed a petition with the Commission alleging a water utility's tariff rule relating to the funding of water main extensions was unreasonable, and requesting the Commission order the utility to adopt their proposed rule. 42 S.W.2d at 349-50. The utility's rule required that a party seeking a water main extension must pre-pay for the extension, with the cost to be later refunded under a specified formula. *Id.* The utility's tariff also contained an exception to this rule, which provided that: "In exceptional cases, where extensions are requested under conditions which may appear to warrant departure from the above rules, the cost of such extensions, if requested and desired by the company, shall be borne as may be approved by the Public Service Commission of Missouri." *Id.* at 350. After a hearing, the Commission determined the utility's tariff was reasonable, and the petitioners appealed. *Id.* at 351.

10

The Missouri Supreme Court agreed with the Commission and found the utility's tariff was reasonable. *Id.* at 351-52. In making this determination, the Court addressed the petitioners' argument that the exception in the tariff made "the rule discriminatory, or at least [made] it possible for the company under the rule to discriminate between proposed consumers." *Id.* at 352. The Court concluded that the rule—on its face—was not unjustly discriminatory:[8]

> The rule does not permit the company at its own will to extend to one applicant for service treatment different from that accorded to others. It is only in exceptional cases where conditions may appear to warrant departure from the rule that the deposit requirement may be waived, and then only by permission of the commission, which body is to determine[] whether or not the exceptional conditions exist and, if so, how the cost shall be borne.

*Id.* The Court further stated, "Without some such provision in the rule the commission could not authorize the company to make an exception in the application of its approved rule." *Id.* at 353.

Public Counsel interprets this last statement to mean that the Commission is not authorized to grant a tariff variance unless the tariff expressly and specifically provides the Commission with that authority. When considered out of context, the Court's statement could be read as Public Counsel urges. However, the *Kennedy* Court was not asked to determine the **source** of the Commission's authority to grant a variance—i.e., whether the Commission's authority stemmed from its statutorily granted powers or the tariff—and thus we do not read the Court's statement as a determination that the Commission's authority came solely from the tariff. Rather, we understand the Court as simply addressing the petitioners' argument that the exception was discriminatory, and as ultimately determining the exception was reasonable because it only applied under exceptional circumstances and with Commission approval. Had the exception provided otherwise, it would have been unjustly discriminatory and, therefore, unlawful to apply.

---

[8] The Court stated, "If rightly observed, as we must assume it will be, we think that provision of the rule will not result in unjust discrimination." 42 S.W.2d at 353.

Further, we find *Kennedy* cannot be interpreted as Public Counsel urges because the Commission cannot give itself authority via a tariff (which is a Commission-approved order[9]) that it does not otherwise have. In other words, if the Commission is not empowered by statute to grant a tariff variance—as Public Counsel asserts—no tariff language can endow the Commission with such authority. *See In re Amendment of Comm'n Rule*, 618 S.W.3d at 524 (the Commission "can function only in accordance with its enabling statutes"). Conversely, if a statute does provide the Commission with authority to perform an act (such as to grant a variance), a provision in a tariff— or lack thereof—cannot "destroy the statutorily granted authority of the Commission." *See Mo. Gas Energy*, 210 S.W.3d at 337 ("We hold that although a properly passed tariff becomes the law of Missouri, placing the text of rules, which the Commission has already passed, into a tariff does not limit the power of the Commission to promulgate conflicting rules that it has the statutory authority to create.").

Although we do not agree with Public Counsel's interpretation of *Kennedy*'s holding, we do find *Kennedy* instructive on a different argument raised by Public Counsel, specifically the argument that subdivision 11 of section 393.140 cannot provide the Commission with authority to grant a variance because it contains the following anti-discrimination provision:

> No corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time; nor shall any corporation refund or remit in any manner or by any device any portion of the rates or charges so specified, nor to extend to any person or corporation any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons and corporations under like circumstances.

---

[9] "Only after the PSC's review and approval do the proposed tariffs take effect." *In re Determination of Carrying Costs.*, 408 S.W.3d at 178.

12

We note that this provision was in effect when *Kennedy* was decided in 1931, and, as described above, in that case, the Missouri Supreme Court upheld a tariff rule that allowed the Commission to grant a waiver from the funding scheme for water main extensions set forth in a water utility's tariff. 42 S.W.2d at 351-53. Thus, the Missouri Supreme Court found authority existed for the Commission to grant a waiver notwithstanding the existence of the above-quoted provision in subdivision 11. The Supreme Court's ruling in *Kennedy* is in accord with affording the word "change" as used in section 393.140(11) a commonly understood meaning that would include variances.

As described above, the Commission has statutory authority to grant a variance from a utility's tariff. Consistent with this authority, the Commission has promulgated a rule governing the filing of applications requesting variances or waivers from tariff provisions.[10] *See* 20 CSR 4240-2.060(4). Versions of this rule have been part of the Commission's regulations since 1975. The rule was last amended in 2011, and Public Counsel did not seek rehearing of the final order of rulemaking on the grounds that the Commission lacked authority to grant a tariff variance. Although Public Counsel now attacks the Commission's authority to grant such variances, we find, for the above-stated reasons, that Public Counsel's challenge lacks merit.

Accordingly, Point I is denied.

### Point II – Good Cause for Variances

In its second point, Public Counsel asserts that "[i]n addition to being unlawful, the Commission's Revised Order is unreasonable and unjust because the facts cited by the

---

[10] *See* § 386.250(6) (The Commission has the power to adopt "rules as are supported by evidence as to reasonableness and which prescribe the conditions of rendering public service, disconnecting or refusing to reconnect public utility service and billing for public utility service."); § 386.410.1 ("All hearings before the commission or a commissioner shall be governed by rules to be adopted and prescribed by the commission.").

Commission do not establish good cause to grant the variances from [Water Company's] tariff Rules 23A.3 and 23C.6."[11] We disagree, and find Public Counsel has not established the Commission's Revised Order was unreasonable.

A Commission order "has a presumption of validity, and the burden is on the party attacking it to prove its invalidity." *State ex rel. Associated Nat. Gas Co. v. Pub. Serv. Comm'n*, 37 S.W.3d 287, 292 (Mo. App. W.D. 2000). The party challenging an order of the Commission must "show by clear and satisfactory evidence" that the Commission's order was unreasonable. § 386.430. "It is only where a Commission order is clearly contrary to the overwhelming weight of the evidence that we may set it aside." *In re Request for Auth.*, 509 S.W.3d at 764 (quoting *State ex rel. Pub. Counsel v. Mo. Pub. Serv. Comm'n*, 289 S.W.3d 240, 247 (Mo. App. W.D. 2009)).

Here, the Commission concluded that good cause existed for the variances "[b]ecause of the added fire protection and access gained to nearby areas, the number of new customers taking service and the revenue expected to be produced, and the specific facts surrounding the location of this development within the service territory of St. Louis Metro District of [Water Company] instead of another tariffed district or [Water District No. 2]." The Commission's decision was based on its findings that DCM Land was installing a 12-inch main in place of an existing 4-inch main in Old Town Cottleville, which would "improve fire protection in the area and provide water main access to additional nearby properties, including existing buildings in Cottleville," and that the Development was located in the service areas of both Water Company and Water District No. 2, those two parties entered into a territorial agreement which placed the Development wholly within Water Company's territory, and, if not for the territorial agreement, DCM Land would be

---

[11] Public Counsel has not challenged the reasonableness of the variance from the 120-day deadline in tariff Rule 23A.2, and "takes no position on whether the stipulated facts support granting a variance from the 120-day requirement[.]"

"able to recover significantly more of its costs under [Water District No. 2's] specifications and rules."

In reaching its decision, the Commission considered additional arguments in support of granting the variance, including that Water Company and "ultimately its other ratepayers, will benefit from the completion of the Cottleville Trails development and the provision of water service to that development by [Water Company]": Water Company "will benefit because it will obtain additional revenue from the development and other ratepayers will benefit because the larger water main that will be installed to serve the new development will afford greater fire protection to other nearby existing buildings as well as future development."

We find the Commission's decision was reasonable, and Public Counsel has failed to meet its burden to prove otherwise. In determining that it was fair for DCM Land to bear less of the cost of extending the water main than it would have had to bear under the rules of Water Company's tariff, the Commission considered the benefits DCM Land was providing to Water Company (in terms of revenue from additional customers) and Water Company's customers (in terms of improved fire protection and water access), as well as the fact that, but for the territorial agreement between Water Company and Water District No. 2, DCM Land would have been subject to Water District No. 2's specifications and rules, which would have allowed DCM Land to recover significantly more of its costs to extend the main. Public Counsel has failed to demonstrate these considerations and the Commission's ultimate determination were unreasonable. Although Public Counsel asserts the location of the Development was "irrelevant," and the "remaining facts cited by the Commission further fail to provide good cause to grant the variances,"[12] Public Counsel

---

[12] In a footnote, Public Counsel argues that "'the added fire protection and access gained to nearby areas, the number of new customers taking service and the revenue expected to be produced' . . . will exist regardless of whether the Commission grants the variances." Public Counsel does not further elaborate on this argument, or provide any support

15

provides minimal explanation of—and scant support for—these arguments. Public Counsel's conclusory assertions fall short of demonstrating by "clear and satisfactory evidence" that the Commission's Revised Order granting the variances was unreasonable.

Point II is denied.

## Point III – Undue Discrimination

In its third point, Public Counsel asserts that the Revised Order was "unlawful and unjust" because it allowed Water Company to engage in undue discrimination in favor of DCM Land in violation of section 393.130.3. We disagree.

Section 393.130.3 provides:

> No . . . water corporation . . . shall make or grant any undue or unreasonable preference or advantage to any person, corporation or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

"Section 393.130.3 and the cases which have discussed the statute do not lay down the proposition that all discrimination is prohibited." *State ex rel. Office of the Pub. Counsel v. Pub. Serv. Comm'n*, 782 S.W.2d 822, 825 (Mo. App. W.D. 1990). "If discrimination is reasonable because of the particular circumstances in the case, rates are not struck down merely because of the dissimilarity." *Id.*; *see also Smith v. Pub. Serv. Comm'n*, 351 S.W.2d 768, 771 (Mo. 1961) ("A discrimination as to rates is not unlawful where based upon a reasonable classification corresponding to actual differences in the situation of the consumers or the furnishing of the service."); *Kennedy*, 42 S.W.2d at 352 ("Discrimination is not unlawful unless arbitrary or unjust."). "Whether a discrimination is unlawful and unjust or the circumstances are essentially dissimilar is usually a question of fact." *Office of the Pub. Counsel*, 782 S.W.2d at 825.

---

for the contention that the Commission improperly relied on these facts in determining good cause existed for the variances.

As described above in our analysis of Point II, the Commission reasonably concluded that good cause existed to grant the variances. For those same reasons, the Commission determined the variances were "not unduly discriminatory." The grounds for finding good cause for the variances similarly establish that granting the variances was not arbitrary, and instead was appropriate under the particular circumstances of this case. In other words, for the same reasons the Commission's decision was reasonable as described in Point II, the Commission's decision was not unduly discriminatory.

Additionally, we note that nothing in the record indicates a similarly situated developer exists or has been treated differently than DCM Land, nor do we discern any reason why another developer could not seek the same type of variance from the Commission. Finally, as the Commission noted, "[t]he scope of the variances sought in this case extend only to the development phase of the project," and "[u]ltimately, service will be provided to residential customers within the proposed development at [Water Company's] generally applicable residential rate, as reflected in its current tariffs, so that residents of the development will be treated the same as [Water Company's] other residential customers."

For the reasons stated above, we find the Commission's Revised Order granting the variances did not result in undue discrimination in favor of DCM Land. Point III is denied.

## Conclusion

The Revised Order of the Commission is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.